**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Jose Guadalupe BARRAZA–LEON,**
**Defendant-Appellant.**

**No. 77–1544.**

United States Court of Appeals,
Ninth Circuit.

March 28, 1978.
Rehearing Denied May 19, 1978.

Jose A. Rodriguez, of Gomez, Paz, Rodriguez & Sanora, Los Angeles, Cal., for defendant-appellant.

Vincent J. Marella, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS and WALLACE, Circuit Judges, and WOLLENBERG,* District Judge.

WALLACE, Circuit Judge:

Barraza-Leon (Barraza) appeals from his conviction after a non-jury trial of violating 8 U.S.C. § 1326 by returning to the United States without receiving the Attorney General's permission to reapply for admission after having been deported. We affirm.

I

In January of 1973, Barraza, an alien, pleaded guilty to a charge of violating 8 U.S.C. § 1325 for using a photo-altered permanent resident alien registration card. After serving the imposed sentence of imprisonment for 30 days, he and seven other aliens were found deportable in proceedings before the Immigration and Naturalization Service (INS) in El Centro, California.

Two days after being deported to Mexico, Barraza reentered the United States without receiving the consent of the Attorney General to reapply for admission as required by 8 U.S.C. § 1326.[1] He was arrest-

---

* Honorable Albert C. Wollenberg, United States District Judge, Northern District of California, sitting by designation.

1. 8 U.S.C. § 1326 provides:

Any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory,

ed on July 20, 1976, in the City of Industry, California and charged with violating section 1326.

After a nonjury trial on stipulated facts, Barraza was convicted as charged. His defense was that his 1973 deportation proceeding was illegal because he was denied due process of law, and that consequently he had not been "deported" within the meaning of section 1326. The trial court allowed him collaterally to attack the 1973 deportation proceeding, but found that he had been validly deported. On appeal, Barraza renews his contention that his earlier deportation was illegal.

## II

■ The threshold issue we must decide is whether Barraza may collaterally attack his 1973 deportation proceeding. Despite the apparent statutory preclusion of such review by 8 U.S.C. § 1105a(c),[2] our circuit has decided that in prosecutions under section 1326, the lawfulness of the underlying deportation is a material element of the offense and thus may be attacked collaterally in the subsequent criminal proceeding. *United States v. Gasca-Kraft,* 522 F.2d 149, 152–53 (9th Cir. 1975). We consider ourselves bound by this decision, and under it the collateral attack must be allowed.

## III

Barraza bases his contention that the 1973 deportation proceeding denied him due process of law on three theories: (1) holding a single proceeding in which several respondent aliens were simultaneously found deportable was a per se violation of due process, (2) both the immigration judge's failure specifically to inquire into

the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

Barraza's background to determine whether he might be eligible for relief from deportation, and (3) the manner in which the immigration judge informed Barraza of his right to be represented by retained counsel and accepted his waiver of that right denied him due process of law. We find no merit in any of these arguments.

### A. *The "Multiple Hearing" Procedure*

■ Although he cites no authority in support of the proposition, Barraza insists that the "multiple hearing" procedure in which eight aliens were simultaneously found to be deportable was not sufficiently individualized to provide a fair hearing and thus should be declared a per se violation of due process.

Although deportation proceedings are civil in nature, and thus not subject to the full panoply of procedural safeguards accompanying criminal trials, *Whetstone v. INS,* 561 F.2d 1303, 1306 (9th Cir. 1977), we have held that due process must be afforded in deportation hearings. *Nee Hao Wong v. INS,* 550 F.2d 521, 523 (9th Cir. 1977). We have examined the transcript of the deportation hearing, and while this procedure, as any other, is potentially capable of abuse, we find no reason to declare all multiple hearings to be per se violative of due process. We believe that just as criminal trials often proceed with multiple defendants, deportation hearings may likewise include multiple respondents without automatically transgressing the bounds of due process.

Moreover, we have no basis for finding any constitutional deprivation on the specific facts before us. It appears from the record that eight aliens were simultaneously brought before the immigration judge

2. 8 U.S.C. § 1105a(c) provides, in part:
 An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order.

who communicated with them through a single interpreter. In response to the judge's questions, only a single, translated reply appears in the record, indicating the substance, though doubtless not the precise words, of each respondent's answer. In this particular, brief proceeding, all of the respondents waived their right to counsel, all admitted deportability, and none wished to appeal. As a result, the answers to each question were translated as one answer for all of the respondents. Barraza has failed, however, to show any actual prejudice resulting from the proceedings as they occurred. In the absence of any substantive allegation or showing that the fairness of the hearing was jeopardized, we cannot conclude that a multiple deportation proceeding is invalid as conducted.[3] While it would be more helpful to have a record of the precise, individual statements of each respondent in multiple deportation hearings, due process does not require it.

B. *The Immigration Judge's Failure to Make an Inquiry Into the Facts*

 At the deportation hearing, the immigration judge informed Barraza that he was entitled to retain counsel and that he was free "to make a statement or present any evidence that you might have to show why you should not be ordered deported. That is, to show why you should be entitled to stay here."

Barraza now contends that this was insufficient, that the immigration judge was required to inquire specifically into his factual background to determine whether any relief from deportation might be available. As authority he cites 8 C.F.R. § 242.17(a) (1977) which provides, in part:

> The special inquiry officer shall inform the respondent of his apparent eligibility to apply for any of the benefits enumerated in this paragraph . . . .

This language, asserts Barraza, required the immigration judge to ask him how long he had been in the United States. This inquiry would purportedly have revealed that Barraza was eligible for a suspension of deportation under 8 U.S.C. § 1254[4] because of seven years' continuous residence in this country.

We are unable to accept this argument for two reasons. First, it does not appear from the record that Barraza was entitled to any such relief. The stipulated facts say nothing about the length of his stay in the United States previous to his 1973 deportation. Indeed, an affidavit of his attorney (which apparently was never itself introduced into evidence) states that Barraza claims to have entered the United States for the first time in 1973, the very year he was deported. In his brief on appeal, Barraza now claims that the 1973 date was "erroneously typed" in place of 1966—precisely seven years prior to the deportation. We cannot accept as fact such conclusory

---

3. The stipulated facts state that Barraza is deemed to have testified that he recalls very little, if anything, about his deportation hearing, and that he did not understand all the legal consequences of or the possible avenues of relief from deportation. This is a far cry from a concrete demonstration of prejudice. The stipulation further establishes as a conclusive fact that the proceeding took place. Nowhere in the record do we find an attack on the accuracy of the transcript made at the hearing except for the allegation, which we accept, that the recorded answers of the interpreter do not reflect the precise word choices of the respondents.

4. 8 U.S.C. § 1254 provides, in part:
 (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the sta-

tus to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—
 (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .

222

and suspect assertions.[5] In the absence of any credible showing that Barraza was entitled to relief from deportation, any error committed by the immigration judge in failing to inquire into his background is harmless. *See Soon Bok Yoon v. INS,* 538 F.2d 1211, 1212–13 (5th Cir. 1976).

Second, we are not convinced that even if Barraza had been eligible to apply for discretionary relief, the immigration judge would have been required to ferret out this information. Section 242.17(a) requires the immigration judge to inform the respondent of his "apparent eligibility." Until the respondent himself or some other person puts information before the judge that makes such eligibility "apparent," this duty does not come into play.

While it is likely that illegal aliens will often not know what grounds for relief might exist in their favor, they must at least be expected to know that the attorney they are expressly advised they are entitled to retain will be able to discover and argue such grounds.[6] Advising Barraza of his right to retain counsel and inviting him to put before the immigration judge all information favorable to his case were all that was required to make his eligibility, if any, for relief from deportation apparent. Further inquiry by the judge was not necessary.

### C. *The Adequacy of the Waiver of Counsel*

█ Barraza's final argument is that he was insufficiently advised of his right to retain counsel, and that his waiver of that right was therefore inoperative. The immigration judge said to Barraza and his fellow respondents:

> I tell you that during the hearing this afternoon, you may, if you wish, be represented by an attorney or by some other qualified person who would speak and act in your behalf. Do any of you wish to be represented by counsel, or are you ready to proceed now by yourself?

5. Nowhere in the record do we find any direct statement of Barraza himself on this issue.

6. Whether counsel should be appointed is not at issue here. We have expressly decided that

This, alleges Barraza, was inadequate because the immigration judge said merely "you *may* [be represented by counsel] if you *wish,*" rather than that the respondents had a *right* to such representation. This argument borders on the frivolous. More clarity in the instruction by the immigration judge was not required.

Barraza's further arguments concerning his right to counsel are merely restatements of his contention, dealt with above, that the multiple hearing was inherently defective. Again, nothing in the record substantiates the conclusory allegations made in Barraza's brief.

AFFIRMED.

"an alien in a deportation proceeding is not entitled to appointed counsel . . . ." *United States v. Gasca-Kraft,* 522 F.2d 149, 152 (9th Cir. 1975).