UNITED STATES of America,
Plaintiff-Appellant,

v.

Eziquio CALDERON–MEDINA,
Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Evaristo RANGEL–GONZALES,
Defendant-Appellee.

Nos. 78–1998, 78–1999.

United States Court of Appeals,
Ninth Circuit.

Feb. 21, 1979.

Michael P. Ruark, Asst. U. S. Atty. (argued), Seattle, Wash., for plaintiff-appellant.

**530**

Katrina C. Pflaumer (argued), Seattle, Wash., for defendants-appellees.

Before WRIGHT and ANDERSON, Circuit Judges, and TAKASUGI, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

The district courts in these consolidated appeals dismissed indictments against Calderon-Medina and Rangel-Gonzales for illegal re-entry following deportation, a violation of 8 U.S.C. § 1326 (1976), because the Immigration and Naturalization Service (INS) had violated at least one of its own regulations in the deportation proceedings. On appeal by the government, the primary issue is whether those violations rendered the deportations unlawful.

Rangel-Gonzales was deported in December 1974 and Calderon-Medina in August 1977. Both are Mexican citizens. The district courts found that in the deportation proceedings INS had violated 8 C.F.R. § 242.2(e) (1978),[1] which provides: "Every detained alien shall be notified that he may communicate with the consular or diplomatic officers of the country of his nationality."

Dismissals in both cases were based on the conclusion that violation of this regulation rendered the original deportations unlawful. Rangel-Gonzales also alleged violations of 8 C.F.R. § 241.1 (1978)[2] and 8 C.F.R. § 242.16 (1978),[3] but no findings were made with respect to those assertions.

The government contends that a deportation order should never be subject to collateral attack during prosecutions for illegal re-entry. Prior decisions of this circuit, however, have established that

in prosecutions under section 1326, the lawfulness of the underlying deportation is a material element of the offense and thus may be attacked collaterally in the subsequent criminal proceeding.

*United States v. Barraza-Leon*, 575 F.2d 218, 220 (9th Cir. 1978) (citing *United States v. Gasca-Kraft*, 522 F.2d 149, 152–53 (9th Cir. 1975)).[4] Thus, the sole issue in these appeals is under what circumstances an INS regulation violation renders a prior deportation unlawful.

The government argues that a regulation violation renders a deportation unlawful only if it denies due process or fundamental fairness in the deportation hearing.

The district court in *United States v. Calderon-Medina*, No. CR 78–32V (W.D. Wash. Mar. 15, 1978) (findings of fact and conclusions of law), held that INS "conformity with applicable laws and regulations must be judged without inquiry into the prejudice caused to the defendant."

---

* Of the Central District of California, sitting by designation.

1. Present codifications of the regulations involved in these cases are identical in all relevant respects to the regulations in effect at the time of the deportation proceedings.

2. This regulation provides for commencement of deportation proceedings by the issuance and service of an order to show cause. Rangel-Gonzales alleged lack of personal service in violation of § 242.1(c) and violation of the § 242.1(b) requirement that, unless specified circumstances required otherwise, at least seven days be allowed between service and the deportation hearing.

3. The INS allegedly violated the regulation's requirement that it "advise the respondent that he will have a reasonable opportunity to examine and object to the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government." 8 C.F.R. § 242.16 (1978).

4. The government would justify overruling these cases on the ground that the *Gasca-Kraft* court failed to discuss the limitation on review of deportation orders contained in 8 U.S.C. § 1105a (1976). That limitation was discussed, however, in *Mendez v. Immigration and Naturalization Service*, 563 F.2d 956 (9th Cir. 1977). Although the statute purportedly prohibits court review of a deportation order after the alien has departed from the United States, *Mendez* held that " 'departure' in the context of § 1105a cannot mean 'departure in contravention of procedural due process' " and that " 'departure' means 'legally executed' departure when effected by the government." 563 F.2d at 958.

*Accord, United States v. Rangel-Gonzales,* No. CR 77–373M (W.D.Wash. Apr. 17, 1978) (order of dismissal incorporating reasons given in *Calderon-Medina* ). Neither district court made a finding on whether the aliens' interests had been prejudiced.

Neither the government's position nor the district court's is correct. *Mendez v. Immigration and Naturalization Service,* 563 F.2d 956 (9th Cir. 1977), illustrates the error of the government's position. The court there held that it was not "necessary to invoke constitutional grounds in order to" find the appellant's deportation unlawful. It stated that

> "[w]hile courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, . . . the basis for such reversals is not . . . the Due Process Clause, but rather a rule of administrative law."

*Id.* at 959 (quoting *Bates v. Sponberg,* 547 F.2d 325, 330 (6th Cir. 1976)). *See Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

The government attempts to establish its argument by analogy, citing *Hernandez-Almanza v. United States Department of Justice,* 547 F.2d 100 (9th Cir. 1976). The *Hernandez* court stated that an exclusion order could not be "attacked at a subsequent hearing unless there was a gross miscarriage of justice at the prior proceedings." *Id.* at 102.

*Hernandez,* however, does not control these cases for three reasons. (1) Violation by the INS of a statute or regulation was not alleged in *Hernandez.* (2) By "prior proceedings" the *Hernandez* court was referring to a criminal conviction justifying exclusion, not to the exclusion proceedings themselves. (3) Collateral attack in *Hernandez* was on the conviction which justified exclusion. *Hernandez* held that such a collateral attack could never result in vacation of the exclusion order. Collateral attack in these cases is on the deportation proceedings which allegedly justify prosecution under § 1326. As discussed above, the law is clear that such a collateral attack may result in dismissal of the charge under § 1326.

■ The government also argues that the regulation violation admitted in these cases does not render the agency action unlawful because this regulation "is not concerned with the integrity of the fact finding process." It has been established, however, that other interests protected by regulations, such as that of privacy, may give one standing to hold an agency to its own regulations. *See, e. g., United States v. Caceres,* 545 F.2d 1182 (9th Cir. 1976), *cert. granted,* 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978).[5]

■ The district court's position is also incorrect. Violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the alien. *Chung Young Chew v. Boyd,* 309 F.2d 857, 864 (9th Cir. 1962); *see American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 538–39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970). Violation of a regulation renders a deportation unlawful only if the violation prejudiced interests of the alien which were protected by the regulation.[6]

---

**5.** In *Caceres* the Internal Revenue Service failed to obtain authorization for electronic monitoring as required by its regulations. Although the IRS had not violated any constitutional or statutory standard, this court held that evidence obtained by such violation must be suppressed. 545 F.2d at 1186–88.

**6.** The regulation admittedly violated here was evidently intended to ensure compliance with the Vienna Convention on Consular Relations, reprinted in 115 Cong.Rec. 30,945 (1969). Article 36 of the Convention provides that aliens shall have freedom to communicate with consular officers of their nationality and that

> [a]ny communication addressed to the consular post by the person arrested, in prison, custody or detention shall . . . be forwarded . . . without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph.

The necessity of demonstrating prejudice was illustrated by the Supreme Court in *American Farm Lines* and by this court in *Barraza-Leon.*

In *American Farm Lines*, freight carriers sought to reverse an Interstate Commerce Commission grant of operating authority to a competitor because the latter's application had not given all information called for by ICC rules. In upholding the ICC action, the Court noted that failure of the applicant-carrier to comply strictly with the rules had not prejudiced other carriers "in making precise and informed objections to [the competitor's] application." 397 U.S. at 538, 90 S.Ct. at 1292.

In *Barraza-Leon*, the petitioner alleged that the deportation judge had violated a regulation requiring that an alien be informed of his apparent eligibility for discretionary relief. This court held that, assuming that the judge had violated the rule by failing to inquire into the alien's background, any error was harmless because there was no showing that the petitioner was qualified for discretionary relief from deportation. 575 F.2d at 221–22.

[4] The district courts in these cases made no finding of specific harm to these aliens resulting from lack of notice of their right to communicate with the Mexican Consul. Nor did appellees identify evidence of such harm in the record. Therefore, we reverse the orders dismissing the indictments.

On remand the aliens should be allowed the opportunity to demonstrate prejudice resulting from the INS regulation violations. The district courts will determine whether violation of 8 C.F.R. § 242.2(e) harmed the aliens' interests in such a way as to affect potentially the outcome of their deportation proceedings. Any such harm should be identified specifically. If either alien shows such prejudice, the indictment against him may be dismissed.

If Calderon-Medina fails to make such a showing, the government may proceed with its case against him. If Rangel-Gonzales fails to make such a showing with respect to § 242.2(e), the district court must determine whether 8 C.F.R. §§ 242.1 or 242.16 were violated in the deportation proceeding and, if so, whether his interests were prejudiced by such violations.

REVERSED AND REMANDED.

TAKASUGI, District Judge, dissenting:

I must dissent.

This nation must manifest integrity in our treaties with foreign countries. To honor the provisions of Article 36 of the Vienna Convention on Consular Relations, as noted in footnote 6 of the majority opinion, mandates a sense of justice and decency. To do anything less is a severe erosive compromise of our very essence equal if not greater than a Constitutional violation.

For the foregoing reasons, I order an affirmance of the district court decision, or in the alternative, to remand the case to the district court imposing the burden on the government to establish the absence of prejudice.

115 Cong.Rec. 30,948 (1969).

The convention was adopted by the United Nations Conference on Consular Relations in 1963. *Id.* at 30,952. The regulation was promulgated in 1967. 32 Fed.Reg. 5619 (1967).

The government relies on an introductory clause of the treaty declaring that the purpose of the privileges and immunities for which the treaty provides "is not to benefit individuals but to ensure the efficient performance of functions by consular posts." 115 Cong.Rec. 30,-945 (1969). Nevertheless, protection of some interests of aliens as a class is a corollary to consular efficiency. This is evident because consular functions listed in article 5 of the Convention include "helping and assisting nationals . . . of the sending State" and "representing or arranging appropriate representation for nationals of the sending State before the tribunals and other authorities of the receiving State . . . where such nationals are unable . . . to assume the defenses of their rights and interests." *Id.* at 30,945–46.