**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Luis VEGA–MEJIA, Defendant-Appellant.**

**No. 79–1282.**

United States Court of Appeals, Ninth Circuit.

Dec. 21, 1979.

Mark E. Griffin, Portland, Or., for defendant-appellant.

Peter Robinson, Portland, Or., for plaintiff-appellee.

Before DUNIWAY, PECK * and CHOY, Circuit Judges.

PER CURIAM:

Vega-Mejia was convicted of illegally reentering the United States after having been previously deported, a violation of 8 U.S.C. § 1326, and was sentenced to two years in prison. He appeals both his conviction and his sentence. We reject each of his contentions and affirm.

I. *Motion to Dismiss*

Vega-Mejia moved to dismiss the indictment against him on the ground that the Immigration and Naturalization Service (INS) failed to advise him of his right to confer with Mexican consular officers before the deportation proceedings underlying this conviction, as required by 8 C.F.R. § 242.2(e) (1978). The district court found that Vega-Mejia was not prejudiced as a result of the INS's error and denied the motion.

Vega-Mejia challenges the denial and, consequently, his conviction on the ground that the underlying deportation proceedings were unlawful because the INS violated 8 C.F.R. § 242.2(e) and because this violation caused him not to seek voluntary departure.

> [I]n prosecutions under section 1326, the lawfulness of the underlying deportation is a material element of the offense and thus may be attacked collaterally in the subsequent criminal proceeding.

*United States v. Calderon-Medina*, 591 F.2d 529, 530 (9th Cir. 1979), *quoting United States v. Barraza-Leon*, 575 F.2d 218, 220 (9th Cir. 1978).

Violation of a regulation does not invalidate a deportation proceeding unless the violation prejudiced interests of the alien that were protected by the regulation. 591 F.2d at 531. We have stated that

> aliens should be allowed the opportunity to demonstrate prejudice resulting from the INS regulation violations. The district courts will determine whether violation of 8 C.F.R. § 242.2(e) harmed the aliens' interests in such a way as to affect potentially the outcome of their deportation proceedings. Any such harm should be identified specifically. If [an] alien shows such prejudice, the indictment against him may be dismissed.

*Id.* at 532.

The district court here applied *Calderon-Medina* and found that Vega-Mejia was not so prejudiced. The court noted that Vega-Mejia had been informed that he could apply for voluntary departure; that, if he did, the application process would take three months, during which he would be held in custody; and that if he acquiesced in deportation he would be sent back to Mexico on the same day. The district court here also noted that, even if he had been advised that he could talk to the Mexican consul, he would not have done so as it would have taken more time.

Throughout the record it is apparent that Vega-Mejia's main concern was to avoid detention and delay in his return to Mexico. Undoubtedly speaking with the consul and applying for voluntary departure would have resulted in some delay. On this record we cannot say that the district court's conclusion that Vega-Mejia was not prejudiced under *Calderon-Medina* is erroneous.

---

* The Honorable John W. Peck, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

## II. *Cruel and Unusual Punishment*

■ Vega-Mejia contends that the two-year sentence of imprisonment imposed upon him constitutes cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution. This contention is completely meritless.

A sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so "grossly out of proportion to the severity of the crime" as to shock our sense of justice. *See United States v. Washington*, 578 F.2d 256, 258–59 (9th Cir. 1978).

Our sense of justice is not in anywise disturbed, let alone shocked, by the sentence imposed here. Vega-Mejia had been deported or granted voluntary departure on numerous occasions and previously had been convicted of illegal reentry. The reentry upon which this conviction is based occurred just a few days after Vega-Mejia finished serving his sentence for the prior conviction. In light of this record, imposition of the maximum sentence allowed by statute does not constitute cruel and unusual punishment.

## III. *Routine Sentencing*

■ Vega-Mejia's final claim is that the district court, by mechanically sentencing him to the maximum allowable prison term, failed to exercise its discretion. He also contends that the district court abused its discretion by refusing to consider the alleged "cruel and unusual punishment" of his pretrial incarceration as a mitigating factor.

The exercise of sound discretion in imposing a sentence requires that the sentence be individualized according to the facts of the particular case. *See Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Sentences that were mechanically imposed have been vacated in the following cases: *United States v. Wardlaw*, 576 F.2d 932, 936–39 (1st Cir. 1978) (in sentencing, judge focused on possible effect on narcotics dealers without considering mitigating or aggravating factors for individual defendants); *United States v. Ingram*, 530 F.2d 602, 603 (4th Cir. 1976) (judge stated that anyone convicted of armed robbery should be sentenced as an adult); *United States v. Hartford*, 489 F.2d 652, 655–56 (5th Cir. 1974) (district judge's comments reflected a rigid policy of imposing maximum sentence on distributors of LSD); *Woosley v. United States*, 478 F.2d 139, 140, 143 (8th Cir. 1973) (en banc) (judge stated that he had sentencing policy in cases of refusing induction into the military, and study showed that his policy was always to impose the maximum sentence); *United States v. Daniels*, 446 F.2d 967, 971–72 (6th Cir. 1971) (judge stated that he always imposed maximum sentence on those refusing to obey the orders of a draft board); *see United States v. McCoy*, 429 F.2d 739, 742–43 (D.C.Cir.1970) (district judge announced that he would sentence to life imprisonment anyone convicted by a jury of armed robbery).

Vega-Mejia suggests that statistics prepared by the United States Probation Office for the District of Oregon prove that the average sentence imposed under § 1326 in Oregon is the same as the maximum sentence. However, those statistics could be read as indicating that the average sentence imposed is not the two years' *imprisonment* that Vega-Mejia claims. Rather, as the appendix to appellant's brief appears to show, it is an average of two years' *imprisonment or probation or a combination* of imprisonment and probation. These statistics, without more, do not demonstrate an inflexible sentencing policy or a failure to individualize the sentence.

We also reject Vega-Mejia's argument that the district court abused its discretion by refusing to consider the "cruel and unusual punishment" that he allegedly suffered during pretrial custody. Vega-Mejia's presentence report recounts facts sufficient to support the district court's imposition of the maximum sentence. Moreover, the district court was aware of Vega-Mejia's allegations of mistreatment. The district court did not abuse its discretion by

refusing to reduce the sentence on this score.

AFFIRMED.