UNITED STATES of America,
Plaintiff-Appellee,

v.

Evaristo RANGEL–GONZALES,
Defendant-Appellant.

No. 79–1439.

United States Court of Appeals,
Ninth Circuit.

April 23, 1980.

Katrina C. Pflaumer, Seattle, Wash., for defendant-appellant.

Kenneth Parker, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before MERRILL, TANG and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal from a conviction of illegal entry after deportation. 8 U.S.C.

§ 1326 (1976). We are called upon to apply the standards laid down in *United States v. Calderon-Medina*, 591 F.2d 529 (9th Cir. 1979), for collateral attacks on deportation based on violations of INS regulations.

This matter was first before this Court as a companion to *United States v. Calderon-Medina*. The trial court had dismissed the indictment on the ground that, in the underlying deportation, the INS had failed to advise the defendant of his right to consult with Mexican Consular authorities as required by INS regulations. 8 C.F.R. § 242.-2(e) (1979).[1] In the first appeal this Court remanded with instructions that the trial court consider whether the violation had prejudiced interests of the defendant protected by the regulation. On remand, after consideration of affidavits submitted on behalf of both the defendant and the government, the trial court found no prejudice. The matter is now before this Court in order to determine whether there was a sufficient showing of prejudice within the meaning of *Calderon-Medina*. We hold that there was a sufficient showing and reverse the trial court.

In *Calderon-Medina*, we reiterated the well established law of this Circuit that deportations are subject to collateral attack in section 1326 prosecutions. *United States v. Barraza-Leon*, 575 F.2d 218 (9th Cir. 1978); *United States v. Gasca-Kraft*, 522 F.2d 149 (9th Cir. 1975). We rejected the government's contention that violation of an INS regulation renders a deportation unlawful only if the violation denies due process or fundamental fairness in the hearing. We also held, however, that violation of a regulation does not automatically invalidate the deportation. Instead, the Court in *Calderon-Medina* adopted a two step test to determine whether violation of a given regulation invalidated the deportation.

First, the Court held that the regulation itself must serve a purpose of benefit to the alien. The Court held that the particular regulation involved here, 8 C.F.R. § 242.2(e) (1979), serves such a purpose. It was intended to insure compliance with this country's treaty obligations to promote assistance from their country of origin for aliens facing deportation proceedings in the United States. 591 F.2d at 531 n.6 (regulation intended to ensure compliance with Vienna Convention on Consular Relations, *reprinted in* 115 Cong.Rec. 30,945 (1969)).

Second, the Court held that once it is determined that the violated regulation serves a purpose beneficial to the alien, the violation invalidates the deportation "only if the violation prejudiced interests of the alien which were protected by the regulation." 591 F.2d at 531.

The Court laid down the following procedure for determining this prejudice in this and the companion case:

> On remand the aliens should be allowed the opportunity to demonstrate prejudice resulting from the INS regulation violations. The district courts will determine whether violation of 8 C.F.R. § 242.2(e) harmed the aliens' interests in such a way as to affect potentially the outcome of their deportation proceedings. Any such harm should be identified specifically.

591 F.2d at 532.

■ Thus, it is clear from *Calderon-Medina* that the initial burden of production of evidence showing prejudice is on the defendant. The prejudice must relate to the interests protected by the regulation. Since the interests of the alien protected by this regulation related to obtaining assistance in preparing a defense to the deportation, we must consider whether appellant demonstrated that such interests were materially affected.

With these principles in mind, we now turn to the evidence presented on prejudice in this case. None of the material present-

1. Rangel also argues that he was prejudiced by violations of 8 C.F.R. § 242.16 (1979) (notice of procedural rights at the deportation hearing) and 8 C.F.R. § 242.1(b) (1979) (service of order to show cause at least seven days before the hearing). Because we hold that the indictment must be dismissed because of the violation of 8 C.F.R. § 242.2(e) (1979), we do not discuss these other alleged violations.

ed to the trial court on remand constituted testimony from which the trial court could draw inferences from demeanor relating to credibility.

The evidence presented by the defendant in support of his claim of prejudice took the form of several affidavits. Defendant's own affidavit stated that he did not know he had a right to consult with the Mexican Consulate, and that he believed that he would have contacted the Mexican Consulate had he known he could do so. The affidavit of the Mexican Consul General in Seattle stated that his office would visit an alien who called for help, would help him contact friends and an attorney, and might even send a Consular representative to the deportation hearing. The affidavit of an experienced immigration attorney stated that an individual in Rangel's position could, with appropriate assistance, have obtained voluntary departure rather than deportation. Affidavits from various family members and legal and social service groups stated that had they known of the appellant's difficulties they would have been of assistance to him.

We conclude that these affidavits made a prima facie showing of prejudice within the meaning of *Calderon-Medina.* The appellant showed he did not know of his right to contact the consular officials, that he would have done so had he known, and that such consultation may well have led not merely to appointment of counsel, but also to community assistance in creating a more favorable record to present to the immigration judge on the question of deportation. The appellant did show some likelihood that had the regulation been followed his defense and the conduct of the hearing would have been materially affected.

The evidence adduced by the United States to rebut this showing consisted of two affidavits. One was an affidavit of the district director of the INS stating that an individual with Rangel's INS record would not have been considered eligible for voluntary departure. That affidavit could have taken into account only the record presented to the judge in the actual deportation proceeding and could not have taken into account any factors which might have been developed for the record as a result of consultation with consular officials.

The second affidavit was by an INS investigator. He stated that only six of approximately 400 individuals with whom he had dealt and who were advised of their right to call the Consulate actually did so. Nothing in the affidavit related specifically to this defendant, nor did the affidavit explain anything about the 400 aliens or the circumstances under which they were advised of their right to call the Consulate.

Based upon his review of the documentary evidence submitted, the trial court refused to dismiss the indictment. The relevant sections of the court's formal findings of fact stated that the INS did violate 8 C.F.R. § 242.2(e) (1979) by not notifying Rangel of his right to call the Consulate, but that Rangel had been notified of his right to call an attorney on prior occasions, and that in view of Rangel's previous experience with the INS he was adequately informed of his rights. The court's Finding No. 6 tracked the language in *Calderon,* saying that Rangel did not "specifically identify" the harm from the violation of the regulation, that his evidence was speculative and inconsistent with his prior acts, that Rangel's evidence did not support a conclusion that the outcome of the proceeding was "potentially affected," and finally that Rangel was not "prejudiced" by the violation. At the hearing the trial judge orally explained that he simply did not believe that Rangel would have called the Consulate, or that he would have obtained an attorney even if he had called the Consulate and had been told of his right to do so.[2]

---

2. On denying the appellant's motion to dismiss, the trial court observed:

We're dealing in absolute, pure, complete, 100 percent solid speculation in this case from both sides. Hindsight. I really find it very difficult to believe and don't believe that even if he [the defendant] had been advised that he had a right to contact the Mexican Consulate that he would have. And even if he would have and the Mexican Consulate

The general standard applied in reviewing trial court findings is that the findings must be upheld unless they are "clearly erroneous." *United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1324 (9th Cir. 1978). *See also Rios v. Chavez*, 620 F.2d 702 at 708 (9th Cir. 1980). Based on the record presented to the trial court in this case, however, the findings were clearly erroneous in finding, first, that the alien would not have called the Consulate had he been properly advised of his right to do so, and, second, in equating knowledge of the right to counsel with knowledge of the right to contact the Consulate.

There is no competent evidence in this record to show that the appellant would not have contacted the Consulate had he known that he was entitled to do so. Appellant's own affidavit states that he believed that he would have contacted the Consulate. The only evidence purporting to rebut that showing is the affidavit of the INS investigator which says merely that in his experience very few aliens who are told that they may contact the Consulate ever do so. This statement setting forth the conduct of others, in circumstances which are unexplained, would not appear to have any bearing on what this particular individual would have done in the particular circumstances facing him. We have been cited no cases, nor has our own research uncovered any, which suggest that it should. What others have done may be relevant to what a specific person *should* do, as in establishing the standard of care in negligence cases. Such use of others' conduct is very different from the use urged here.[3]

We recognize that there may well be many aliens who, for one reason or another, may not wish to make their presence in this country known to their governments or who may not wish to take any step to protest or delay deportation. Persons in such a position are not prejudiced within the meaning of *Calderon-Medina* if they are not informed of their right to contact the Mexican Consulate. *See United States v. Vega-Mejia*, 611 F.2d 751, 752 (9th Cir. 1979). However, even assuming that most aliens are in such a position, it does not follow that all are or, more specifically, that this particular alien was. The right established by the regulation and in this case by treaty is a personal one. This Court recognized that fact in *Calderon-Medina* when it stressed inquiry into the particular circumstances of the underlying deportation. The effect of its violation on one individual cannot be measured by the effect of its violation on others. Personal rights cannot be abrogated simply because others do not exercise them. *See Missouri ex rel. Gaines v. Canada*, 305 U.S. 337, 350–51, 59 S.Ct. 232, 236–37, 83 L.Ed. 208 (1938); *McCabe v. Atchison, T. & S. F. R. Co.*, 235 U.S. 151, 161–162, 35 S.Ct. 69, 71, 59 L.Ed. 169 (1914).[4]

The district court further erroneously concluded that even if appellant had contacted the Consulate, nothing would have come of it because appellant already knew of his right to counsel. Even if we accept, arguendo, the assumption that the Mexican Consulate would have done nothing more than advise appellant of his right to counsel (an assumption contrary to the Consul General's own affidavit), it remains difficult

---

would have advised him that he was entitled to an attorney, he wouldn't have asked for an attorney. He'd been told that on at least five other occasions. So I find there's been no prejudice under the circumstances here involved.

3. Moreover, even in negligence cases, the party offering the evidence must at least show that the conduct of others sought to be introduced occurred in comparable circumstances. *See generally* 2 J. Wigmore, Evidence § 461 (Chadbourn rev. 1979). There has been no such minimal showing here.

4. That the evidence is presented here in statistical form does not affect this principle. The dangers of mathematical and statistical evidence are well catalogued by Professor Tribe in Trial by Mathematics: Precision and Ritual in the Legal Process, 84 Harv.L.Rev. 1329, 1358–77 (1971). These dangers should make us even more suspicious of any attempt to change the inquiry from appellant's personal interest in the regulation to its overall rate of utilization.

from a practical standpoint to equate being advised by the INS in an adversary setting with being advised by the Mexican Consulate. Moreover, the INS is required to advise of the right to counsel under regulations independent of the regulation violated here. *E. g.*, 8 C.F.R. §§ 242.16(a), 236.2(a) (1979). An interpretation equating the two requirements in effect renders 8 C.F.R. § 202.2(e) (1979) surplusage, and should be avoided. *Pettis ex rel. United States v. Morrison-Knudsen Co.*, 577 F.2d 668, 673 (9th Cir. 1978). Such an interpretation also frustrates the purpose of the treaty which the regulation implements, namely to promote assistance to aliens from officials of their country of origin. *See United States v. Calderon-Medina*, 591 F.2d 529, 531 n.6 (9th Cir. 1979).[5]

■ In sum, the appellant in this case carried his initial burden of going forward with evidence that he did not know of his right to consult with consular officials, that he would have availed himself of that right had he known of it, and that there was a likelihood that the contact would have resulted in assistance to him in resisting deportation. There was no evidence to rebut that showing and the indictment should have been dismissed.

Reversed.

---

5. Moreover, the record in this case fails even to support the trial court's conclusion that appellant had been meaningfully advised previously by INS of his right to counsel. Although the trial court stated that appellant had been advised at least five times of his right to counsel, the record shows that the appellant does not speak or read English, and was advised in Spanish of his right to counsel on only two occasions prior to the deportation proceedings at issue here. In both cases this notice was nothing more than a sentence buried in a standard printed form. There is no indication that the right to counsel was explained to him or that he was given any idea how he might contact an attorney.