**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edgar RAMIREZ, Defendant–Appellant.**

No. 04–50168.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 2005.

Decided Aug. 23, 2005.

Ronald L. Cheng, Esq., Bonnie L. Hobbs, Esq., Erik M. Silber, Esq., USLA—Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Jonathan D. Libby, Deputy FPD, FPDCA—Federal Public Defender's Office, Los Angeles, CA, for Defendant–Appellant.

Before: O'SCANNLAIN and WARDLAW, Circuit Judges, and LOVELL,* District Judge.

### MEMORANDUM **

Edgar Ramirez appeals the district court's denial of a motion to dismiss an indictment charging him with illegal reentry in violation of 8 U.S.C. § 1326. Ramirez argues that a due process error during his removal proceeding made his deportation order fundamentally unfair within the meaning of 8 U.S.C. § 1326(d)(3).

The Immigration Judge ("IJ") improperly failed to notify Ramirez of possible relief from deportation. Sufficient information was before the IJ to have allowed the IJ to infer that relief was available to Ramirez as the unmarried child of a legal permanent resident ("LPR"). *See United States v. Barraza–Leon,* 575 F.2d 218, 222 (9th Cir.1978). The IJ knew that Ramirez had entered the country legally with his parents and siblings when he was young and that Ramirez had previously made an application to the INS under the Family Unity Program, a program which is available only to spouses or unmarried children of LPRs. *See* 8 C.F.R. § 236.11. In addition, the INS attorney at the deportation hearing had a document in his possession that clearly stated that both Ramirez's parents were LPRs. The IJ asked Ramirez whether his parents were U.S. citizens, but given his background the IJ also should have asked Ramirez whether either of his parents were LPRs. Once that fact was known, the IJ had the duty to advise Ramirez of the possible relief from deportation available by applying to adjust his status to LPR (by submitting an I–485 application) and requesting a section 212(h) waiver of his prior crime (by submitting an I–601 application). *See Bui v. INS,* 76 F.3d 268, 271 (9th Cir.1996). Ramirez has thus shown that a due process violation occurred at his deportation hearing. Moreover, government counsel conceded the due process defect in argument here.

We review *de novo* a district court's denial of a motion to dismiss an indictment under 8 U.S.C. § 1326(d). *United States v. Leon–Paz,* 340 F.3d 1003, 1004 (9th Cir. 2003). The district court decided that Ramirez suffered no prejudice because Ramirez could not show any plausible ground for relief. *See United States v. Ubaldo–Figueroa,* 364 F.3d 1042, 1048 (9th Cir. 2004). The district court erred by denying Ramirez the right to present witnesses to testify about the extreme family hardship waiver, but even without witness testimony it is apparent that Ramirez did have a plausible ground for a section 212(h) waiver.

The evidence that was before the district court showed that Ramirez's mother had

---

* The Honorable Charles C. Lovell, Senior United States District Judge for the District of Montana, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

already lost one son to deportation, Ramirez was a young man still living at home and a financial contributor to her household, and the mother's health declined precipitously following Ramirez's deportation. Nor would the deportation force a mere relocation of the family, as with the husband and wife in *United States v. Muro–Inclan*, 249 F.3d 1180, 1184 (9th Cir.2001), or in *United States v. Arce–Hernandez*, 163 F.3d 559, 563–64 (9th Cir.1998). Instead the deportation of Ramirez would split the nuclear family (child from parent), as in *United States v. Arrieta*, 224 F.3d 1076, 1082 (9th Cir.2000).

In addition, Ramirez's burden of showing an *extreme* family hardship was significantly reduced by the weakness of the prior conviction. *See Yepes–Prado v. INS*, 10 F.3d 1363, 1366 (9th Cir.1993) (heightened showing of hardship equities required to overcome grave criminal offense and warrant relief). The evidence shows plainly that although Ramirez pled guilty to assault with a dangerous weapon as part of a structured plea agreement that saved his brother from a lengthy prison term, Ramirez did not actually use or possess a dangerous weapon during the assault. In fact, most of the *Pablo v. INS*, 72 F.3d 110, 113 (9th Cir.1995), factors appear to favor Ramirez, should he request a section 212(h) waiver.

Ramirez has demonstrated an extreme family hardship sufficient to show that it was plausible that he might have received a section 212(h) waiver. This showing satisfies the proof of prejudice necessary for a finding that the deportation order was fundamentally unfair.

However, "once [the defendant] makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome." *United States v. Gonzalez–Valer-*

*io*, 342 F.3d 1051, 1054 (9th Cir.2003) (citing *United States v. Gonzalez–Mendoza*, 985 F.2d 1014, 1017 (9th Cir.1993)). The government successfully demonstrates that even had the IJ properly advised Ramirez of the possibility of adjustment of status and 212(h) waiver, the outcome of the proceedings would not have changed because Ramirez did not have a visa application immediately available to him. Although ordinarily we might remand for the determination of whether a visa was immediately available, *Bui v. INS*, 76 F.3d 268 (9th Cir.1996), in this case no reasonable probability of an immediately available visa exists. Ramirez's visa application was dated May 28, 1993, but visa applications after January 1, 1991, are not currently being processed for family-sponsored 2B visa applicants from Mexico. Therefore, Ramirez did not have a visa immediately available to him at his 1999 deportation proceeding.

Ramirez alternatively proposes that he be deemed to have had an immediately available visa because he was, at the time of the deportation proceeding, in a genuine relationship with a U.S. citizen (who is now his wife). This proposal would presumably have entailed the IJ asking Ramirez these questions: (1) do you have a girlfriend who is a U.S. citizen? and (2) can you marry your girlfriend? If these questions were answered affirmatively, then the IJ would be required to inform Ramirez that he might obtain relief from deportation by marrying his girlfriend and having her obtain a visa for him; the IJ would also be required to stay the deportation proceedings to allow the marriage and visa application to be accomplished.

As the government rightly points out in its letter brief, such a procedure would appear to be incompatible with Congress' policy of prohibiting adjustment of status based upon marriages entered into during removal proceedings for the purpose of

avoiding removal. *See* 8 U.S.C. § 1255(a)(1); 8 C.F.R. § 245.1(c)(9). Moreover, even had the IJ discussed the matter with Ramirez, the fact remains that on the date of the deportation proceeding Ramirez was not married, and, most important, no visa was then immediately available to him.

Having an immediately available visa is a fundamental prerequisite for adjustment of status, *see* 8 U.S.C. § 1255(a)(3) (1999), upon which Ramirez relies for his 212(h) waiver. Without an immediately available visa, Ramirez could not obtain an adjustment of status, and without an adjustment of status, Ramirez could not apply for the 212(h) waiver. A defendant challenging a section 1326 conviction must not be statutorily ineligible for the relief sought. *See United States v. San Juan Cruz*, 314 F.3d 384, 390 (9th Cir.2002) (finding no prejudice under § 1326(d) because defendant was ineligible to adjust immigration status, there being no visa immediately available to him); *see also United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1056 (9th Cir. 2003) (when showing prejudice under § 1326(d), defendant must not be ineligible for relief sought). Accordingly, the government has met its burden of showing that even without the due process violation the outcome of Ramirez's deportation proceedings would not have changed. We therefore affirm Ramirez's conviction and sentence.

AFFIRMED.