**UNITED STATES of America**

v.

**Eric CLARK.**

**Crim. No. 88–0035–P–02.**

United States District Court,
D. Maine.

Oct. 7, 1988.

Jonathan R. Chapman, Sp. Asst. U.S. Atty., Portland, Me., for plaintiff.

Laurie D. West, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

### I. *Findings of Fact*

Hearing having been had on Defendant's motions to suppress evidence, the Court finds the pertinent facts to be as follows. In the afternoon of December 10, 1987, Defendant delivered a package to one Carrie King, an employee of the "Patchwork Place," for shipment by United Parcel Service to an address in Maine. The Patchwork Place is a gift shop which also serves as a contract package drop for UPS and as a United States Mail postal substation. The package was processed in the normal manner and came into the control of UPS personnel at its service facility. There, it was observed by Larry Stone, a Loss Prevention Supervisor for UPS then in the course of his duties. For reasons that are obscure, he opened the package for inspection. He did so on his own initiative, having had no prior contact with any law enforcement officer about the package.

In the course of the inspection, Stone observed that the package contained a brown mailing envelope, which he opened. Inside the mailing envelope he found a transparent plastic bag containing a white powder. Other than packaging materials, the package contained only the white powder. Stone set the package aside without resealing it and called the Delray Beach Police Department. He talked with a supervisor in that office, telling him that one of his couriers had picked up a package at the Patchwork Place and had brought the package to the UPS center in Deerfield Beach, that he found the package suspicious, and had opened it. He told the supervisor that he believed the package contained cocaine.

Officer Vincent Mintus of the Delray Beach Police Department was scheduled to report to work at 9:00 a.m. on December 11, 1987. He received a call at home from his supervisor, asking him to get in as quickly as possible. He reported to the police department between 8:00 and 8:45 a.m., and was told by his supervisor of the conversation with Mr. Stone at UPS. He was requested to investigate.

Officer Mintus then went straightaway to the UPS facility at Deerfield Beach and met with Mr. Stone in Mr. Stone's work area there. Stone advised Mintus when they first met that one of his couriers had picked up a package at Delray Beach and had brought it to the UPS distribution center. He said that he found this particular package to be suspicious in nature and he opened it.

Mintus observed the package in question on a table when it was pointed out to him by Mr. Stone. He walked to the table and looked into the box, the closure flaps of which were open. Mintus observed there a brown mailing envelope, opened at one end, in which he saw the end of a clear plastic bag. In the bag he could see a white powder. He then reached into the box, picked up the mailing envelope, and withdrew the plastic bag. Finding the plastic bag to have a "Ziplock" sealer on it, Mintus opened the Ziplock strip for the purpose of smelling the contents of the plastic bag. He had the capacity to recognize cocaine by smell due to the odor of the alkalies contained in it. He concluded that the substance "appeared to be cocaine," took nothing out of the bag, and performed no field test at that time. He then resealed the bag, placed it in the envelope, put the envelope back into the box, and took it in his vehicle to the Delray Beach Police Department.

Officer Mintus arrived at the police department at approximately 11:00 a.m. In the presence of his supervisor, the box was once again opened, and the brown envelope was removed and sent to another office to be dusted for fingerprints. Officer Mintus then opened the plastic bag once again and conducted a field test, using a Regency test kit. The field test was positive for the presence of cocaine. The box was then stored in an evidence safe.

Contact was then established with Maine authorities, which resulted in Officer Guy Godbout, a drug investigator with the Biddeford, Maine Police Department, going to the Delray Beach Police Station on December 12, 1988, in company with Officer Mintus. At the police station, the box was opened again, in the presence of Officer Godbout, Officer Mintus, and Mintus's supervisor. Officer Mintus put on a surgical glove, reached into the bag, took a small sample, a rock-like crystal, and put it into another plastic Ziplock bag. That bag was Ziplock sealed, initialed, dated, and sent to the crime lab for chemical analysis. Officer Godbout also did a field test of the substance contained in the plastic bag at that time. Throughout these proceedings, Officer Mintus believed the white powdery substance in the plastic bag to be cocaine.

Thereafter, the original plastic bag with the remainder of the white powder was returned to a mailing envelope identical to that originally contained in the box, both were placed in the box, and the box was resealed and delivered to Officer Godbout. He returned with the box to Maine and ultimately a controlled, police-observed delivery of the box was made to the location indicated by the address on the box. From the time the package left the UPS office until the time it was delivered in Maine, it was in the custody and control of law enforcement officials, primarily Officers Mintus and Godbout.

After receiving the box from Mr. Stone on December 11, 1987, and returning it to the Delray Beach Police Department, Officer Mintus went to the Patchwork Place and interviewed Carrie King, the employee who had received the box from the Defendant. In the course of that discussion, he told her that the box contained cocaine.

On December 14, a Saturday, the Defendant again appeared at the Patchwork Place and left four packages to be sent by fourth class United States Mail to a different address in Maine. Carrie King, by her design, was absent from the premises when that occurred. When she returned, she was informed by other employees that the Defendant had left the packages for mailing. She then attempted to call a postal inspector, but was unable to reach one. She called the Delray Beach Police Department and left a message for Officer Mintus to the effect that the same man who mailed the previous package had left four packages for mailing on December 14.

Officer Mintus ultimately received that message and went to look at the packages. He thereafter called Ronald Jensen, a United States Postal Inspector, and in due course Inspector Jensen met Officer Mintus at the Delray Beach Police Department. Jensen had also received a message from Carrie King, and he and Officer Mintus conversed about the four packages. Inspector Jensen, accompanied by Officer Mintus, then went to the Patchwork Place, where they were shown the four boxes in question.

Inspector Jensen opened the boxes in the presence of Officer Mintus and they both observed the contents of each box. They were found to contain no contraband. In one of the boxes, however, a document referred to as "a receipt" with a handwritten name on it, was found. This document was removed from the box and delivered to Officer Mintus. The boxes were then resealed, and it appears that they were processed in the normal course through the United States mails.[1]

---

1. A week after the hearing, Defendant filed a motion to supplement the record on the motion to suppress by submitting an affidavit of Ms. Marcia Brown. The Government responded that it would agree to such supplementation if a supplemental affidavit by Officer Godbout could be submitted. By letter, the Government then suggested that Officer Mintus would clarify the situation by affidavit if there were time. The Court hereby *DENIES* Defendant's motion.

Both parties had ample opportunity to present evidence at the hearing and to rebut testimony that was presented. Defendant states that Ms. Ridge's evidence is newly discovered because there was no expectation that Officer Godbout's testimony would be as it was. Defendant could, however, have asked at the time for a recess or slight continuance to obtain a rebuttal witness. He did not do so. The Court will not now reopen the record. Clearly, live testimony

Defendant has moved to suppress all the evidence gained as a result both of the warrantless search and seizure of the UPS package and of the search and seizure of the receipt from the fourth class mail packages.

### First Search

■ The Court finds that the motion to suppress evidence obtained as a result of the first search is controlled by *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The facts of that case, involving seizure and a field test by a Drug Enforcement Agency Agent of a white powder initially found in multiple layers of packaging by a Federal Express employee, are virtually identical to those in this case up to the point of the field test. The Court there held that the seizure of the powder and performance of a field test on it did not violate the Fourth Amendment. Acknowledging *Jacobsen*, Defendant Clark argues that he is challenging not the agent's field test, but rather the agent's subsequent seizure of 1.16 grams of the powder for a full chemical test.

The Supreme Court in *Jacobsen* stated that a seizure lawful at its inception can violate the Fourth Amendment if its execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures. The Court found that Jacobsen's possessory interests had been intruded upon because some of the white powder had been destroyed to perform the field test. To assess the reasonableness of the conduct, the Court suggested a balancing test in which the nature and quality of the individual's Fourth Amendment interests are weighed against the importance of the governmental interests alleged to justify the intrusion.

Applying this test, it is clear, as it was in *Jacobsen*, that the law enforcement interests justifying the seizure were substantial. The circumstances here militate even more strongly in favor of the Government than would need to be presented on the point now sought to be raised, and it should have been

in *Jacobsen*, for after a field test identifying the substance as cocaine had already been performed, there were not only the surrounding indicia that the substance tested was indeed cocaine, but also a high level of certainty based on chemical analysis. The police have a strong interest in keeping contraband away from the public, and a citizen has no possessory interest in substances that have been established to be illegal drugs. 21 U.S.C. § 844 ("it shall be unlawful for any person knowingly or intentionally to possess a controlled substance …").

In *Jacobsen*, the Court went on to minimize the property interest of the respondent because only a trace of the substance had been seized. In this case, 1.16 grams were seized for the laboratory test. While this amount is more than a trace, it is not a large quantity, in light of the total quantity of over 300 grams contained in the package. Because of the virtual certainty that the substance was cocaine, and the relatively small quantity of the substance tested, the Court finds that the safeguards of a warrant would only negligibly advance Fourth Amendment interests. Accordingly, the Court does not find that the seizure of the 1.16 grams of cocaine was unreasonable.

■ To the extent that Defendant argues that the test performed was an illegal, warrantless search because it exceeded the warrantless search conducted by United Parcel Service personnel, the Court disagrees. In *Jacobsen*, the Supreme Court discussed the diminished privacy interest in substances that are almost certainly contraband, and found no intrusion of that interest by performing a field test which could only determine whether or not the substance seized was cocaine. In this case, because the field test had already been performed, and the substance seized had been determined to be cocaine, the further testing invaded no privacy interest of Defendant, for as Congress and the Court have both determined, there exists raised earlier.

no privacy interest in illegally possessing contraband. *Jacobsen,* 466 U.S. at 123, 104 S.Ct. at 1661.

Some courts have held that conducting a full chemical test on materials turned over by a private person goes beyond the private search and thus violates the Fourth Amendment. *See United States v. Mulder,* 808 F.2d 1346 (9th Cir.1987); *State v. von Bulow,* 475 A.2d 995 (R.I.1984). The reasoning employed in these cases is that while a field test is designed to show only whether a substance is or is not contraband, a full chemical test may reveal other information in which the defendant has a privacy interest. Unlike the case at bar, in those cases there was no precedent field test. There was, therefore, a possibility that the chemical test would reveal some private fact. In this case, however, the field test had determined that the substance was cocaine. The chemical test was performed to verify what was already known to a virtual certainty. Since Defendant had no privacy interest in the substance legally held by the police, the situation is still one in which the safeguards of a warrant would not advance Fourth Amendment interests in any significant respect. *Jacobsen,* 466 U.S. at 125, 104 S.Ct. at 1662.

*The Second Search*

Defendant has also moved to suppress evidence obtained in the search and seizure of the four packages sent by him by fourth class mail, including a receipt bearing his name which was seized from one of the packages. He contends that violations of postal regulations by Carrie King and related actions by Agent Mintus violated his rights under the Fourth Amendment and constituted an unreasonable search. He further contends that Postal Inspector Jensen acted beyond his authority in allowing Agent Mintus to observe the search of the packages and that he violated postal regulations by seizing the receipt and any other physical evidence from the packages. On the basis of these postal code violations, Defendant seeks suppression of the receipt and observations by both Jensen and Min-

tus of the contents and the cover of the packages.

■ Carrie King, an employee of the United States Postal Service and the Patchwork Place, had been informed by Agent Mintus that the UPS package discussed above contained cocaine. After the same person who had sent the UPS package returned and sent four more packages by fourth class mail, King tried to inform the Postal Inspector. Failing that, she called Agent Mintus's office and left a message for him. Mintus called her and she told him that the man who had previously sent a package by United Parcel Service had brought to her for mailing four more packages addressed to Maine.

Domestic Mail Manual section 115.5 provides that no employee shall disclose information on the outside cover of any piece of mail. An exception is provided for disclosure to a postal inspector. Agent Mintus went to the Patchwork Place and was shown the packages by King, again in violation of section 115.5. Mintus then called Inspector Jensen who later, in Mintus's presence, opened the packages.

Defendant argues that King's and Mintus's conduct violated his Fourth Amendment rights. The Court disagrees. In *Ex Parte Jackson,* 96 U.S. 727, 732–33, 24 L.Ed. 877 (1877), the seminal case on the extension of Fourth Amendment rights to the mails, the Supreme Court made plain that while the constitutional guaranty against unreasonable search and seizures extends to papers and packages in the mails that have been closed against inspection, it does not extend to their outward form and weight. Thus, Defendant had no *constitutional* privacy interest either in the fact of there being four packages or in their general description. Applying this rule, the Supreme Court in *United States v. Van Leeuwen,* 397 U.S. 249, 252–53, 90 S.Ct. 1029, 1032–33, 25 L.Ed.2d 282 (1970), found that the inspection of the outside of air packages did not affect a privacy interest because there had been "no possible invasion of the right 'to be secure in their persons, houses, papers and effects' protected by the Fourth Amendment against

'unreasonable searches and seizures.'" Based on the reasoning in *Van Leeuwen*, the Court of Appeals for the Ninth Circuit held that because senders knowingly expose the outside of the mail to postal employees and others, they cannot keep those areas private and cannot claim an intrusion upon their reasonable expectations of privacy. *United States v. Choate*, 576 F.2d 165, 177 (9th Cir.1978); *see also United States v. Huie*, 593 F.2d 14, 15 (5th Cir. 1979) (no reasonable expectation of privacy in information placed on exterior of mailed items and intended to be viewed).

Relying on *Choate*, Defendant argues that he has a reasonable expectation of privacy in the exterior of the mail because the postal regulations, which prohibit disclosing information about the mails, established the permissible limits of governmental intrusion.[2] In *Choate*, the Court of Appeals had declined to suppress evidence gained in a mail cover on the ground of intentional circumvention of administrative regulations, finding that there had been no such violation. *United States v. Choate*, 576 F.2d 165. Ninth Circuit precedent at the time did prescribe suppression of evidence obtained when federal investigators intentionally failed to comply with applicable regulations. *United States v. Caceres*, 545 F.2d 1182 (9th Cir.1977). That case, however, was subsequently reversed by the United States Supreme Court. *Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

On appeal, the Supreme Court in *Caceres* held that the fact that evidence is obtained in violation of an agency regulation does not require suppression if the regulation is not required by the Constitution or by statute. *Id. United States v. Irvine*, 699 F.2d 43, 46 (1st Cir.1983). *Caceres* dealt with an Internal Revenue Service regulation that prohibited "consensual electronic surveillance," *i.e.*, tape recording of conversations between an agent and a taxpayer, without prior authorization. The Court considered several factors in determining whether to enforce the agency regulation through the remedy of suppression: (1) whether the regulation was constitutionally or statutorily mandated; (2) whether the violation raises other constitutional questions; (3) whether the Administrative Procedure Act [APA] might mandate enforcement; (4) whether, even without a rigid rule of exclusion, the case, on an individualized basis, requires exclusion. *Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733.

Considering the same factors, the Court is persuaded that Carrie King's violation of the postal rule against disclosure of information on the outside of mail does not warrant suppression of the evidence obtained after the opening of Defendant's four packages. First, as already noted, the regulation prohibiting disclosure of information concerning the outside of mail, *e.g.*, its form, weight, and the writing on the outside, is not constitutionally mandated. *See Jackson*, 96 U.S. 727; *United States v. Choate*, 576 F.2d at 177; *United States v. Choate*, 619 F.2d 21, 22–23 (9th Cir.1980). Defendant has cited no statute requiring such a regulation; nor has the Court found one.

There is no other constitutional question raised. For example, there has been no claim or showing that had the regulation been followed, the result would have been different. Carrie King tried to telephone the Postal Inspector to report the information she ultimately reported to Mintus.

---

**2.** Defendant also cites *Oliver v. United States*, 239 F.2d 818, 823 (8th Cir.1957), in which the court stated:

> The question of unreasonable search and seizure in postal inspections is entitled to be resolved, where legislative measures or administrative regulations exist by such valid limits as have been fixed and held out thereunder as constituting the extent of mail opening and examination in which the Post Office Department will engage.

In *Oliver* the court stated that in promulgating a regulation to the effect that first class mail may not be opened, the government had fleshed out the constitutional right of users of the mails, expounded in *Jackson*, to be free of searches of mail intended to be kept closed against inspection. Both *Jackson* and *Van Leeuwen* made plain that the examination of the outside of mail and packages has no constitutional significance. Although regulations may set the boundaries of previously established constitutional rights, they do not necessarily create new ones. The Court will turn to *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, for guidance as to when violation of government regulations requires suppression of evidence obtained as a result of the violation.

Had she reported to the Postal Inspector that a person who Mintus had told her had shipped cocaine via UPS from her shop two days earlier had returned with four packages to be mailed, he would clearly have a duty to investigate further and undoubtedly would have inspected the packages. The Postal Inspector was permitted to disclose to Officer Mintus any information observable on the exteriors of the packages under section 115.5(a), and was certainly encouraged to do so under a regulation in the Prohibited Mailings Handbook emphasizing cooperation between the Postal Inspection Service and law enforcement personnel dealing with narcotics. Prohibited Mailings Manual § 311. Thus, the same information concerning the packages' exteriors would have been available to Mintus in any event. The violation of the regulation, therefore, ultimately worked no prejudice to Defendant.[3]

Finally, this is not a case where individual circumstances would require suppression. Carrie King had tried to follow the regulations. Although she violated them, on the record it is clear that had she been successful in her attempt to comply, the result would have been the same. Her actions were not such heinous, willful violations that they would justify exclusion on an individualized basis in the absence of a general exclusionary rule. Thus Carrie King's violations of the postal regulations do not warrant suppression of the fruits of

the search of the four boxes.[4] Although Defendant complains that Agent Mintus's viewing of packages at the Patchwork Place constituted an unreasonable search, the above discussion makes plain the fact that Defendant had no protected privacy interest of constitutional dimension in the exterior properties of the packages observed by Mintus.

Defendant concedes that his fourth class packages were subject to inspection under applicable postal regulations. Domestic Mail Manual § 115.22(b); *Santana v. United States*, 329 F.2d 854 (1st Cir. 1964) (fourth class packages are subject to postal inspection). It is clear that after having learned of the prior contraband shipped by the same sender from the Patchwork Place to Maine, Inspector Jensen had reason to be suspicious about the mailability of the contents of the packages. His opening of the packages was, therefore, entirely lawful.

Following the lawful inspection of the packages, Inspector Jensen seized a receipt found in one of them and surrendered it to Mintus. Since the receipt was mailable material, this was admittedly in violation of postal regulations. *See* Domestic Mail Manual §§ 115.22 and 115.32.[5] Defendant argues that the physical evidence seized, as well as the observations of Inspector Jensen and Agent Mintus, who was present when the package was opened, must be suppressed because of these violations.

**3.** This case, like *Caceres,* is not an APA case.

**4.** The Ninth Circuit had the opportunity to review its decision in *Choate* again after the Supreme Court decided *Caceres.* Defendant contended that the customs agent violated postal regulations when requesting the challenged mail cover and that the mail cover should therefore be suppressed. The Court held that "where violation of an agency regulation does not raise a constitutional question and defendant 'cannot reasonably contend that he relied on the regulation, or that its breach had any effect on his conduct,'" he may not seek judicial enforcement of the agency regulation by means of the exclusionary rule. *United States v. Choate,* 619 F.2d 21 (9th Cir.1980).

**5.** The pertinent sections of the Domestic Mail Manual are as follows:

115.22 Mail Not Sealed Against Inspection. Mail not sealed against inspection may be opened, surrendered, its contents inspected

and read, or information concerning it released by an authorized postal employee only:
   a. Under a search warrant in accordance with 115.6.
   b. Without a search warrant in order to determine the mailability of the contents or whether the correct postage has been paid.
   c. As otherwise expressly permitted by postal regulations.

   .    .    .    .    .

   115.31 Sealed Mail Generally Not Detained. No postal employee may detain mail sealed against inspection (other than dead mail) *except:*
   a. A postal inspector acting diligently and without avoidable delay, upon reasonable suspicion, for a brief period of time, to assemble evidence sufficient to satisfy the probable-cause requirement for a search warrant in accordance with 115.6, and to apply for, obtain, and execute the warrant.
   b. A postal inspector acting pursuant to 39 U.S.C. 3003 who causes to be withheld from

The Court agrees that the physical evidence seized and the observations of Mintus must be suppressed. It does not agree that the observations of Inspector Jensen must be suppressed.

The Fourth Amendment provides that citizens shall be free from unreasonable searches and seizures. The Government has conceded that there was no authority for Inspector Jensen's seizure of the receipt that they now seek to offer in evidence and that it should have been returned. The seizure of Defendant's property was patently unreasonable and in violation of the Fourth Amendment. The evidence seized will therefore be suppressed. Information gleaned by either Inspector Jensen or Agent Mintus as a result of the actual illegal seizure of the receipt will also be suppressed.

The Government argues, however, that the information gained by the postal inspector in the lawful inspection, *i.e.*, the information contained on the receipt, should not be excluded. The Court agrees. Upon legally opening the package, the postal inspector saw the receipt and gained the information contained on it.

The illegal seizure here *followed* a lawful search which revealed the information now sought to be excluded. As the Supreme Court stated long ago:

The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court, but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. *If knowledge of them is gained from an independent source they may be proved like any other.*

*Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920) (emphasis added). The legal search of the packages provided a source for acquisition of the information on the receipt independent of the later illegal seizure of the receipt. The observations of the postal inspector concerning the receipt may be proved like any other facts. *Silverthorne*, 251 U.S. at 392, 40 S.Ct. at 183.

Agent Mintus, however, could not lawfully have searched the packages without a warrant, and the Government has not cited any authority sanctioning his presence while the search was being conducted by Inspector Jensen. Inspector Jensen clearly violated postal regulations, Domestic Mail Manual § 115.22, and Defendant's privacy rights by allowing Mintus to be present during the search of the packages to determine their mailability. This regula-

delivery mail which he believes is involved in a scheme described in that statute, provided that prompt written notice is given to the addressee advising him of (1) such action, (2) the reasons therefor, and (3) his right to have such action reviewed pursuant to 39 CFR Part 964.

c. A postal inspector acting pursuant to 39 U.S.C. 3004 who causes to be withheld from delivery letters or parcels sent in the mail to places not the residence or regular business address of the person to whom they are intended to enable the person to escape identification, provided that prompt written notice is given to the addressee advising him of (1) such action, (2) the reasons therefor, and (3) his right to have such action reviewed pursuant to 39 CFR Part 964.

d. A postal employee acting in strict accordance with postal regulations (for example, 115.4 or 153.145).

e. A postal employee acting under postal regulations with the express consent of the addressee or sender (for example, 152.7 or 153.19).

f. A postal employee acting under an order issued under 39 U.S.C. 3005, relating to false representations, lotteries, and unlawful matter.

g. A postal employee acting under 115.62.

h. A postal employee conducting a mail count by direction of his postmaster or a postal inspector.

i. A postal employee acting under an order of a Federal court.

j. A postal employee, during the period required to seek and obtain instructions under 153.7, concerning mail whose delivery is in dispute, or under 424.1 of the *Postal Operations Manual* (POM) concerning legal process, other than a search warrant duly issued under Rule 41 of the Federal Rules of Criminal Procedure, purporting to require the surrender of mail matter.

115.32 Unsealed Mail.

Mail not sealed against inspection may be delayed or detained for the reasons stated in 115.31, and as otherwise expressly permitted by postal regulations.

tion, defining the breadth of the intrusion allowed when a package is "open to inspection" is constitutionally based since it protects defendants' privacy interests. *See Caceres,* 440 U.S. 741, 99 S.Ct. 1465. Therefore, any information gained by Agent Mintus as a result of his unauthorized presence at the search must be suppressed.

## ORDER

Accordingly, it is hereby ORDERED that Defendant's Motion to Suppress Evidence (the first governmental search) be, and it is hereby, DENIED. On the motion to suppress regarding the second search, the Court ORDERS that the receipt and any other physical evidence seized from the packages sent by fourth class mail and information gained as a result of that seizure are hereby SUPPRESSED. The motion is hereby DENIED as to the observations of Inspector Jensen made in the course of his legal inspection. The motion is hereby GRANTED as to the observations made by Agent Mintus during Jensen's inspection, and they are hereby SUPPRESSED.