**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUIS ENRIQUE SANCHEZ, AKA Enrique Cruz Sanchez, AKA Luis Llamas Sanchez, AKA Luis Charles Sanchez, AKA Enrique Sanchez Cruz, AKA Luis Enrique Sanchez Llamas, *Petitioner*, v. WILLIAM P. BARR, Attorney General, *Respondent.* | No. 14-71768 Agency No. A076-359-028 ORDER |

Filed April 1, 2019

Before: Kim McLane Wardlaw, Richard A. Paez, and Morgan Christen, Circuit Judges.

Order;
Concurrence in Order by Judge Paez;
Statement Respecting Order by Judge O'Scannlain;

# SUMMARY[*]

## Immigration

The panel filed an order denying rehearing en banc in a case in which the panel held that Luis Sanchez may be entitled to termination of removal proceedings without prejudice as the result of having made a prima facie showing of an egregious violation of 8 C.F.R. § 287.8(b)(2) (to detain a person for questioning, an immigration officer must have reasonable suspicion the person is, or is attempting to be, engaged in an offense against the United States, or is an alien illegally in the country), and remanded for the agency to afford the Government an opportunity to rebut Sanchez's prima facie case.

Concurring in the denial of rehearing en banc, Judge Paez, joined by Judge Wardlaw, wrote to reiterate points in response to Judge O'Scannlain's separate statement. Judge Paez wrote that Judge O'Scannlain's statement attempted to obscure the core issue—the egregious regulatory violation—with the smokescreen of the exclusionary rule, and wrote that Judge O'Scannlain's opinion rested on a mischaracterization of decades of precedent.

Judge Paez wrote that, contrary to Judge O'Scannlain's assertions, the panel did not pull the remedy of termination with prejudice out of thin air; rather, the remedy was based on this court's precedent and consistent with the Supreme Court's long-standing concern for regulatory violations that implicate fundamental rights. Responding to Judge

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

O'Scannlain's insistence that the court has no authority to address an egregious violation of this regulation, Judge Paez wrote that the regulation implicates constitutional rights, thereby triggering the court's duty to ensure agency compliance. Judge Paez also responded to Judge O'Scannlain's opinion that the remedy would do nothing but delay Sanchez's "inevitable removal," stating that this view misses the essence of Sanchez's claim and the harm he sought to remedy. In this regard, Judge Paez wrote that more was at stake than the outcome of a single case in that the remedy recognized the tainted nature of the initial detention and, one hopes, would encourage agency compliance. Finally, Judge Paez wrote that Judge O'Scannlain's parade of horribles regarding the consequences of the panel's remedy were unsubstantiated and, at best, hypothetical.

Respecting the denial of rehearing en banc, Judge O'Scannlain, joined by Judges Callahan, Bea, Ikuta, Bennett, and R. Nelson, wrote that the court should have reheard this case en banc to correct the panel's errant decision, a very unfortunate precedent with troublesome consequences for the court's immigration jurisprudence. Judge O'Scannlain observed that the government in this case possessed independent and (constitutionally firm) evidence establishing Sanchez's unlawful status, and, as a result, suppression of the evidence obtained by the arrest would do Sanchez no good. Judge O'Scannlain wrote that, eager to give Sanchez *some* relief, the panel stretched this court's case law beyond recognition by awarding termination without prejudice instead of an appropriate Fourth Amendment remedy—suppression of the unlawfully obtained evidence.

Judge O'Scannlain wrote that the panel's decision (1) defied the Supreme Court's decision in *INS v. Lopez-*

*Mendoza*, 468 U.S. 1032 (1984), (2) ignored basic Fourth Amendment principles by ordering a more-intrusive result than the Amendment authorizes, (3) fashioned a remedy to enforce agency regulations without a sound legal basis for such an imposition, (4) showed a profound misunderstanding of the difference between substantive and procedural rights and their appropriate remedies, (5) cited as authority a handful of inapposite out-of-circuit precedents, and (6) imposed serious practical costs on the administration of immigration proceedings. Judge O'Scannlain concluded that, worst of all, the opinion's imposition of an extraordinary remedy wastes everyone's time, for it does nothing but delay the petitioner's inevitable removal.

## ORDER

A judge of the court sua sponte requested a vote on whether to rehear this case en banc. A vote was taken, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. *See* Fed. R. App. P. 35(f). Rehearing en banc is **DENIED**.

PAEZ, Circuit Judge, with whom WARDLAW, Circuit Judge joins, concurring in denial of rehearing en banc:

This case began when the United States Coast Guard seized Luis Sanchez solely on the basis of his race. The critical question before the panel was what, if any, remedy existed for Sanchez. We thus confronted a clear case of racial profiling—an egregious violation of the Department of Homeland Security's own internal regulation to deter unlawful searches and seizures, 8 C.F.R. § 287.8(b)(2). In

line with the Second Circuit, we held that an egregious violation of § 287.8(b)(2) *could* warrant termination of removal proceedings without prejudice and we remanded to the agency to afford the Government an opportunity to rebut Sanchez's prima facie case. *Sanchez v. Sessions*, 904 F.3d 643, 653–54 (9th Cir. 2018) (citing *Rajah v. Mukasey*, 544 F.3d 427, 446–47 (2d Cir. 2008)). Nothing more, nothing less. This limited but tailored remedy ensures that immigration officers are held accountable for violating rules that are meant to "safeguard" individuals' fundamental rights. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1044 (1984). Even the Government agreed that remand, not rehearing en banc, was the appropriate next step for Sanchez's case.

Judge O'Scannlain's separate statement attempts to obscure the core issue—the egregious regulatory violation—with the smokescreen of the exclusionary rule.[1] His quarrel with our opinion, however, rests on a mischaracterization of decades of precedent that this court has wisely sidestepped. I therefore concur in the court's denial of rehearing en banc and respectfully but firmly reiterate a few points in response to errors in Judge O'Scannlain's statement.

---

[1] Judge O'Scannlain's reliance on *Lopez-Mendoza* is particularly telling as it illustrates a misunderstanding of the case law. In holding that the Fourth Amendment does not generally apply to civil immigration proceedings, the Supreme Court relied in part on the fact that the agency "has developed rules restricting stop, interrogation, and arrest practices." 468 U.S. at 1044–45. Moreover, the Court stated that it was not addressing a regulatory violation because "no challenge [wa]s raised here to the [agency]'s own internal regulations." *Id*. at 1050. Thus, *Lopez-Mendoza* explicitly left open the question of how courts should address regulatory violations in this context.

\*\*\*

As a preliminary matter, there is no dispute that Sanchez made a prima facie showing of a violation of § 287.8(b)(2): he was detained solely on the basis of his Latino appearance and hence, without "reasonable suspicion," as required by the regulation.[2]  As detailed in our opinion, the Coast Guard detained Sanchez and his three companions, including a 14-month-old child, after they called 911 for assistance when they were stranded on a fishing trip from Channel Islands Harbor.  Without reasonable suspicion, the Coast Guard contacted Customs and Border Protection to report "the possibility of 4 undocumented worker[] aliens," which ultimately led to Sanchez's arrest, interrogation and removal proceedings.  Looking to past cases involving regulatory violations, we joined the Second Circuit to hold that petitioners like Sanchez may be entitled to termination of their removal proceedings without prejudice for egregious regulatory violations.[3]  *Sanchez*, 904 F.3d at 653 (citing

---

[2] The regulation provides: "[i]f the immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may briefly detain the person for questioning." 8 C.F.R. § 287.8(b)(2).

[3] Judge O'Scannlain's attempt to sidestep the holding of *Rajah* is unconvincing.  The plain language of *Rajah* identifies termination as an appropriate remedy for "pre-hearing," "conscience-shocking" regulatory violations.  544 F.3d at 447.  *Rajah* therefore expressly allows for termination in Sanchez's case because racial profiling is "conscience-shocking" and egregious.  *Sanchez*, 904 F.3d at 656 (citing, inter alia, *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 521 (1989) (Scalia, J., concurring)).  Moreover, subsequent cases in the Second Circuit have faithfully applied the *Rajah* framework.  *Maldonado v. Holder*, 763 F.3d 155, 163 (2d Cir. 2014).  The fact that the Second Circuit has identified

*United States v. Calderon-Medina*, 591 F.2d 529 (9th Cir. 1979); *Rajah*, 544 F.3d at 446–47).

Contrary to Judge O'Scannlain's assertions, we did not pull such a remedy out of thin air. As we mapped out, *see Sanchez*, 904 F.3d at 653–55, the theory behind termination without prejudice can be traced back to our 1979 decision in *Calderon-Medina*, which established that regulatory violations could "invalidate a deportation proceeding" if "the regulation serves a purpose of benefit" to the immigrant and "the violation prejudiced interests" which were protected by the regulation.**[4]** 591 F.2d at 531. The remedy turns on *when* the violation occurred and to *what degree*, not—as Judge O'Scannlain claims—what part of the Constitution is implicated. *See Sanchez*, 904 F.3d at 655 (concluding that for the rare subset of cases involving pre-hearing regulatory violations, "[o]nly full termination of the proceedings without prejudice can 'effectively cure[] any procedural defect by putting the parties into the position they would have been had no procedural error taken place.'" (citation omitted)). We need not look further than our discussion in *Calderon-Medina*: "the basis for such reversals is not . . . the Due Process Clause, but rather a rule of administrative law." 591 F.2d at 531 (citing *Mendez v. INS*,

---

the remedy but not yet applied it illustrates, not the non-existence of the remedy, but rather, the difficulty that petitioners face in making a prima facie showing of an *egregious* violation.

**[4]** This remedy has since been endorsed, in one form or another, by several of our sister circuits, as well as the Board of Immigration Appeals. *See, e.g.*, *Montilla v. INS*, 926 F.2d 162, 166–68 (2d Cir. 1991); *Leslie v. Attorney Gen.*, 611 F.3d 171, 180 (3d Cir. 2010); *Castaneda-Delgado v. INS*, 525 F.2d 1295, 1302 (7th Cir. 1975); *Yui Fong Cheung v. INS*, 418 F.2d 460, 465 (D.C. Cir. 1969); *Matter of Garcia-Flores*, 17 I. & N. Dec. 325, 328–29 (BIA 1980).

563 F.2d 956, 959 (9th Cir. 1977)).  Thus, the core inquiry is whether the regulation serves a "purpose of benefit" to the petitioner.  *Id.*

This approach is consistent with the Supreme Court's long-standing concern for regulatory violations that implicate fundamental rights.  *See Bridges v. Wixon*, 326 U.S. 135 (1945); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *see also United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014).  And this is where the Fourth Amendment comes into play.  Because § 287.8 (b)(2) reflects the Fourth Amendment guarantee against unreasonable searches and seizures, the panel opinion concludes that the regulation was promulgated for the benefit of immigrant petitioners.  *Sanchez*, 904 F.3d at 651–52.  As Judge O'Scannlain acknowledges, our authority to compel an agency to follow its own regulations must have its source in the Constitution itself or some federal statute.  Op. Respecting Denial at 18 (citing *United States v. Caceres*, 440 U.S. 741, 749–55 (1979)).  The upshot of *Caceres* is that "[a] court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *Id.* at 749.  The regulation at issue here no doubt implicates constitutional rights, thereby triggering our duty to ensure agency compliance.

Yet, Judge O'Scannlain insists that we have no authority to address the Government's egregious violation of § 287.8(b)(2) and opines that the remedy we ordered would do nothing but delay Sanchez's "inevitable removal."  This completely misses the essence of Sanchez's claim and the harm he seeks to remedy.  There is more at stake than the outcome of a single case.  *See Montilla*, 926 F.2d at 170. "Careless observance by an agency of its own administrative

processes weakens its effectiveness in the eyes of the public because it exposes the possibility of favoritism and of inconsistent application of the law." *Id.* at 169 (citing *McKart v. United States*, 395 U.S. 185, 195 (1969)). In the context of this case, slap-on-the-wrist repudiations that permit the agency to pick up where it left off despite racial profiling do little to safeguard individuals in this country from immigration enforcement practices that "teeter[] on the verge of 'the ugly abyss of racism.'" *Maldonado*, 763 F.3d at 174 (Lynch, J., dissenting) (quoting *Korematsu v. United States*, 323 U.S. 214, 233 (1944) (Murphy, J., dissenting)). In such circumstances, termination without prejudice may be appropriate because it forces the agency to begin anew—a remedy that properly recognizes the tainted nature of the initial detention and, one hopes, encourages agency compliance in the future.

As a final point, Judge O'Scannlain trots out a parade of horribles that are unsubstantiated and, at best, hypothetical. As the opinion emphasized, termination without prejudice is a remedy "reserved for truly egregious cases" of immigration enforcement. *Sanchez*, 904 F.3d at 655. Any fears that this remedy will spur crafty lawyers across the country to disrupt removal proceedings are belied by the fact that the Second Circuit recognized this very remedy in 2008 and there have been no such harebrained schemes since.

\*\*\*

The reality of immigration proceedings—with no established right to appointed counsel, no right to discovery, or any other host of rights implicated in other proceedings—is that individuals would be hard-pressed to reach the stage that Sanchez has in proving a prima facie case of an egregious regulatory violation. Because he has met his initial burden of showing a racially motivated detention, we

ordered a narrowly tailored remedy: Sanchez's removal proceedings would be terminated, but only if the Government cannot meet its burden of rebutting Sanchez's prima facie showing on remand. Given the procedural posture of this case, and all the reasons outlined above and in our opinion, the court wisely denied rehearing en banc.

O'SCANNLAIN, Circuit Judge,[**] with whom CALLAHAN, BEA, IKUTA, BENNETT, and R. NELSON, Circuit Judges, join, respecting the denial of rehearing en banc:

In this deportation proceeding, which commenced over eight years ago, our court's opinion concedes that admissible evidence establishes Mexican citizen Luis Enrique Sanchez's removability. Current immigration law therefore required the three-judge panel to allow the deportation order to take effect. Unsatisfied with such prospect, the panel holds instead that Sanchez's entire removal proceeding now must be *terminated* because he was detained without reasonable suspicion—a violation of the Fourth Amendment.

Such an absurd result contravenes basic Fourth Amendment principles, defies Supreme Court precedent, and lacks any basis in our case law (or that of any other circuit). Worse, the panel disguises the Fourth Amendment

---

[**] As a judge of this court in senior status, I no longer have the power to vote on calls for rehearing cases en banc or formally to join a dissent from failure to rehear en banc. *See* 28 U.S.C. § 46(c); Fed. R. App. P. 35(a). Following our court's general orders, however, I may participate in discussions of en banc proceedings. *See* Ninth Circuit General Order 5.5(a).

harm as a "regulatory violation" to work a simple and obvious end-run around it. At bottom, the panel fails to grasp that Fourth Amendment wrongs warrant Fourth Amendment remedies—nothing less, but nothing more. This case has languished for almost a decade, and now the government is reduced to restarting deportation proceedings, using the same evidence to achieve the same outcome that the Immigration Judge ("IJ") ordered in 2011. Our court should have reheard this case en banc to correct the panel's errant decision, a very unfortunate precedent with troublesome consequences for our immigration jurisprudence.

I

The facts are straightforward.[1] Luis Enrique Sanchez is a citizen of Mexico who entered the United States without inspection in 1988. In 2004, Sanchez applied for and received "Family Unity Benefits" from the United States Citizenship and Immigration Service ("USCIS"), which temporarily authorized him to live and to work in the United States. USCIS later denied Sanchez's request for an extension of these benefits in 2008, and at that point he no longer enjoyed lawful status to remain in the United States.

In February 2010, Sanchez and three others were marooned off the coast of California when their fishing boat's engine lost power. The Coast Guard towed their boat into port, demanded identification documents, and detained them for two hours until Customs and Border Protection ("CBP") officers arrived. The CBP officers took Sanchez to a CBP facility, interrogated and strip-searched him, and then released him. The officers prepared a Form I-213 (Record of

---

[1] The facts in this Section are drawn from the opinion. *See Sanchez v. Sessions*, 904 F.3d 643, 646–49 (9th Cir. 2018).

Deportable/Inadmissible Alien), which included Sanchez's express admission to them that he had entered the United States without inspection and was undocumented.

In November 2010, the Department of Homeland Security ("DHS") issued a Notice to Appear and charged Sanchez with being removable. To prove Sanchez's removability, the government relied on both the Form I-213 prepared by the CBP officers and on Sanchez's prior application for Family Unity Benefits. Sanchez sought to have the Form I-213 suppressed and to have his removal proceedings terminated. He argued that his detention by CBP officers was based solely on race in contravention of the Fourth Amendment and 8 C.F.R. § 287.8(b), which requires arresting officers to possess a "reasonable suspicion" of the person's unlawful presence.[2]

The IJ denied the motion and ordered Sanchez removed. In 2014, the Board of Immigration Appeals ("BIA") dismissed Sanchez's appeal, leaving the deportation order in place. It concluded that, regardless of whether the Form I-213 should have been suppressed, the government could use "independent evidence . . . to establish his nationality and identity." *See Sanchez v. Sessions*, 904 F.3d 643, 648

---

[2] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

The relevant regulation provides: "If the immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may briefly detain the person for questioning." 8 C.F.R. § 287.8(b)(2).

(9th Cir. 2018). Sanchez timely petitioned for review in our court in 2014.**[3]**

## II

Sanchez contends specifically that the Coast Guard detained him based on his Latino appearance in violation of the Fourth Amendment and 8 C.F.R. § 287.8(b). The three-judge panel agreed, but instead of holding merely that the evidence obtained from the arrest should have been suppressed, its opinion orders the entire deportation proceeding *terminated*. The opinion's irredeemable flaw is its attempt to cure an illegal arrest—a quintessential Fourth Amendment violation—with a remedy that the Fourth Amendment would never authorize.

## A

If Sanchez's Fourth Amendment rights were violated, then he is indeed entitled to a Fourth Amendment remedy. Under our circuit's case law, Sanchez may (and indeed did) seek the exclusion of wrongfully obtained evidence from his immigration proceedings. *See, e.g.*, *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1018 (9th Cir. 2008).**[4]** But here, as

---

**[3]** A word of explanation regarding the inordinate delay in this case's resolution. Although briefing in our court was completed in March 2015, the case was not argued until March 2017. In August of the same year, a reasonable time after argument, the panel issued its decision. *See Sanchez v. Sessions*, 870 F.3d 901 (9th Cir. 2017). After the tragic passing of a member of the initial three-judge panel, a re-constituted panel withdrew the original opinion in July 2018 and filed the revised opinion at issue here in September 2018. A call to rehear the case en banc failed.

**[4]** I continue to believe that our application of the exclusionary rule in civil deportation proceedings flouts the Supreme Court's decision in

the panel reluctantly concedes, the brute fact is that suppression does him no good: the government possesses independent (and constitutionally firm) evidence establishing Sanchez's unlawful status. *See Sanchez*, 904 F.3d at 653. Eager to give Sanchez *some* relief, however, the panel stretches our case law beyond recognition. Instead of suppression of the unlawfully obtained document, the panel awarded him "termination without prejudice," thus mandating commencement of a new round of removal proceedings with another hearing before the IJ, another appeal to the BIA, and another petition for review to our court—potentially another eight years of safe haven in the United States. *Id.* at 657.

The opinion seems to invoke a straightforward compensatory-justice theory. Sanchez's initial detention, the opinion reasons, resulted from racial profiling, so the subsequent deportation proceeding was "tainted from [its] roots." *Id.* at 655 (internal quotation marks omitted). Thus, only "full termination of the proceedings without prejudice can effectively cure any procedural defect by putting the parties into the position [in which] they would have been had no procedural error taken place." *Id.* (internal quotation marks omitted). Stated differently, the opinion purports to restore Sanchez to his rightful position by washing away the "taint" of his unlawful arrest. To do so, it prescribes a government "do-over," now nine years after the first round

---

*INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984). *See Lopez-Rodriguez v. Holder*, 560 F.3d 1098, 1106 (9th Cir. 2009) (Bea, J., dissenting from the denial of rehearing en banc) (arguing that "our precedent has set us on a collision course with the Supreme Court" by incorporating "the exclusionary rule, with all its attendant costs, back into immigration proceedings, after the Court has taken it out"). Here, the panel works a radical and unwarranted expansion of our already dubious precedent.

started, as if the entire eight-year-long deportation proceeding had never occurred.

## B

Such approach fails. The Fourth Amendment does not authorize a court, for example, to invalidate an arrest, prosecution, or subsequent proceeding simply because it resulted from such a violation. *See United States v. Morrison*, 449 U.S. 361, 366 (1981) ("[W]e have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment."). Such limitation makes sense. The Fourth Amendment safeguards the substantive rights to "privacy and security." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (internal quotation marks omitted). It does *not* establish a right to be free from prosecution for crimes committed—even if such prosecution results from an illegal search. *See United States v. Leon*, 468 U.S. 897, 906 (1984) ("[T]he use of fruits of a past unlawful search or seizure works no new Fourth Amendment wrong." (internal quotation marks omitted)).

The Supreme Court's application of the exclusionary rule confirms the correct approach. Because a Fourth Amendment violation is "fully accomplished by the unlawful search and seizure," trial remedies like the exclusionary rule are "neither intended nor able to cure" the constitutional harm. *Id.* (internal quotation marks omitted). As such, exclusion is *not* designed to restore the defendant to his pre-violation position, but rather to deter future violations by offering him a windfall (*i.e.*, the exclusion of incriminating evidence at trial). *See Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Just as with the exclusionary rule itself, however, the panel's novel termination remedy does not "cure" the initial unlawful arrest. Thus, the opinion's core premise—that termination washes away the "taint" of

the government's initial violation—contravenes the proper application of the Fourth Amendment.

To illustrate, consider whether the panel's theory would make any sense in a criminal proceeding. Suppose that a citizen is unconstitutionally detained because of his race, but law enforcement officials also discover—because of evidence obtained independently of such arrest—that he committed a drug crime and charge him accordingly. The exclusionary rule, of course, would not compel the suppression of the "independently acquired" evidence. *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). Could the court instead dismiss the criminal indictment because the illegal arrest tainted the criminal proceeding that followed? Could the court order the defendant to be released from custody? Of course not. *See Morrison*, 449 U.S. at 366 ("The [Fourth Amendment] remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."). Indeed, the panel does not cite a *single* case that terminates a criminal proceeding for such a reason. And if termination of proceedings would be unavailable in a criminal prosecution, then it should be inconceivable in a civil deportation proceeding.

Perhaps aware that Fourth Amendment doctrine forecloses its reasoning, the panel alludes instead to a separate justification for its remedy: deterrence. *See Sanchez*, 904 F.3d at 655; *see also* Paez Concurrence at 8–9. But whether such remedy will prevent *future* violations against *other* aliens has nothing to do with restoring *Sanchez* to his rightful position. Worse, the panel's indistinct reference to the remedy's deterrence value rests on contestable empirical assumptions, and the panel makes no effort to show that such benefits outweigh the costs. *Cf. INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040–50 (1984)

(balancing the benefits and costs of the exclusionary rule in deportation proceedings). Besides, the panel's subtle reliance on deterrence smuggles in the very reasoning that drives the Court's application of the exclusionary rule—reinforcing, yet again, that the Fourth Amendment should guide this case's resolution.

## C

*Lopez-Mendoza*, the Supreme Court's leading case on the application of the Fourth Amendment to civil deportation proceedings, also repudiates the panel's reasoning. There, government agents arrested Lopez-Mendoza "at his place of employment" even though the "agents had not sought a warrant to search the premises or to arrest any of its occupants." *Id.* at 1035. Below, he "objected only to the fact that he had been summoned to a deportation hearing following an unlawful arrest." *Id.* at 1040. Nevertheless, the Supreme Court upheld the IJ's removal order because the "mere fact of an illegal arrest has *no bearing on a subsequent deportation proceeding*." *Id.* at 1041 (emphasis added and brackets and internal quotation marks omitted).

*Lopez-Mendoza* rejects the opinion's core premise. Here too, Sanchez's illegal arrest has "no bearing" on his removal proceeding. Consequently, the arrest cannot "taint[]" the proceeding "from [its] roots." *Sanchez*, 904 F.3d at 655 (internal quotation marks omitted). The panel ignores the fact that the Supreme Court has expressly rejected the very theory on which it relies.

## III

To avoid the Fourth Amendment's doctrinal dead-end, the panel mysteriously claims that its remedy seeks to cure only a "regulatory violation"—not a violation of the Fourth

Amendment itself. *See Sanchez*, 904 F.3d at 653–55. The relevant regulation states that an immigration officer may "detain [a] person for questioning" if the officer has a "reasonable suspicion . . . that the person being questioned is . . . an alien illegally in the United States." 8 C.F.R. § 287.8(b)(2). The panel reasons that the Coast Guard's violation of § 287.8(b)(2)—again, Sanchez's detention on the basis of race—estops the government from continuing the proceeding.

But § 287.8(b)(2), as the opinion notes, exists simply to "effectuate" the Fourth Amendment and "all but parrots" its requirements. *Sanchez*, 904 F.3d at 651, 652 n.9; *see also* Paez Concurrence at 8. We may not launder Fourth Amendment violations through agency regulations to authorize a remedy that the Fourth Amendment would never allow. The panel's decision to order the government to terminate deportation proceedings because of a regulatory violation is unsustainable in theory and unfounded in precedent.[5]

## A

Let's begin with a first principle that the opinion obscures: our authority to compel an agency to follow its own regulations *must* have its source in the Constitution itself or some federal statute. *See United States v. Caceres*,

---

[5] One need not dwell on the opinion's specific doctrinal test because its errors are so much more fundamental. But for ease of reference, it held that a petitioner should receive such termination remedy if: "(1) the agency violated a regulation, (2) the regulation was promulgated for the benefit of petitioners; and (3) the violation was egregious, meaning that it involved conscience-shocking conduct, deprived the petitioner of fundamental rights, or prejudiced the petitioner." *Sanchez*, 904 F.3d at 655.

440 U.S. 741, 749–55 (1979) (refusing to compel an agency to follow its own regulation because such regulations were not "required by the Constitution or by statute," and because neither the Fourth Amendment, the Due Process Clause, nor the Administrative Procedure Act authorized the Court to enforce compliance). We lack a roving commission to seek out and to redress every wrong inflicted by the Executive Branch, remediating instead only *specific* legal wrongs with the *specific* remedies authorized by federal law.

Unfortunately, the opinion never bothers to identify the legal basis for its "regulatory violation" theory. Certainly, the panel invokes the Constitution when it observes that the violated regulation "effectuate[s] the Fourth Amendment." *Sanchez*, 904 F.3d at 652 n.9; *see also id.* at 651 (regulation "all but parrots" Fourth Amendment standards); *id.* at 652 (regulation "reflects the Fourth Amendment's requirements"); *id.* at 656 n.15 (regulation "is premised on Fourth Amendment standards"). Yet the Fourth Amendment itself cannot sustain the panel's holding. Which raises the question: what *is* the legal basis for the panel's remedy?

It cannot be the "Fifth Amendment due process guarantee that operates in removal proceedings." *Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030, 1035 (9th Cir. 2008). The Due Process Clause promises aliens the "full and fair" opportunity to assert the right to remain in the United States. *Montes-Lopez v. Holder*, 694 F.3d 1085, 1092 (9th Cir. 2012) (internal quotation marks omitted). But here, Sanchez's unlawful arrest has *no effect at all* on the deportation proceeding itself. His illegal arrest does not infringe upon his ability to offer evidence, to obtain counsel, or to make his case before the IJ. No legal support there!

Nor is it the Immigration and Nationality Act, *see* 8 U.S.C. § 1252, or "a rule of administrative law," *United*

*States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979); *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978) (stating that cases mandating agency compliance with their own regulations "enunciate principles of federal administrative law rather than of constitutional law"). Indeed, the otherwise-thorough opinion does not include a *single sentence* of textual analysis demonstrating that § 1252 authorizes us to order the government to restart deportation proceedings because of an initial unlawful arrest. Likewise, the panel cannot claim to articulate some new rule of administrative common law because its holding is incompatible with our treatment of other administrative agencies. *See Caceres*, 440 U.S. at 749–55.

In sum, the panel's inability to identify the legal basis for its remedy is telling, as it suggests that there isn't one. Instead, the gravamen of Sanchez's complaint is that the government violated the Fourth Amendment—not his due process rights, not a statutory right, not some rule of administrative law, and not an unidentifiable potpourri of protected interests. But if this case involves a Fourth Amendment wrong, it should be controlled by Fourth Amendment jurisprudence. *Those* principles, however, unambiguously foreclose the panel's extravagant remedy.

B

Unsurprisingly, no other court has imposed such a remedy. Indeed, the panel does not identify a *single decision* in which a federal court actually required termination of proceedings when a regulatory violation invaded Fourth Amendment interests. Instead, the panel scrounges up a single Ninth Circuit case concerning a deprivation of a procedural (not substantive) right in a criminal proceeding, *see Calderon-Medina*, 591 F.2d at 529; a BIA decision that

(needless to say) is not precedent at all, *see Matter of Garcia-Flores*, 17 I. & N. Dec. 325 (BIA 1980); a Second Circuit opinion that it over-reads, *see Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008); and a smattering of inapposite out-of-circuit decisions. *See Sanchez*, 904 F.3d at 654–55.

The bulk of the cases it cites in support of its theory concern regulations offering procedural protections that ensure constitutionally (or statutorily) mandated adjudicative due process.[6] But such *procedural* protections differ in kind from the *substantive* interests protected by the regulation in this case. Because the violation of a procedural right (*e.g.*, the right to counsel) increases the risk of erroneous deportation, such violation might require a new proceeding with the procedural protection restored. *Cf. Morrison*, 449 U.S. at 364–65 (describing the Court's approach to Sixth Amendment remedies). By contrast, the regulation in this case—like the Fourth Amendment itself—safeguards each person's substantive right to privacy. Thus, it makes no sense to draw on cases involving defects in the proceedings themselves to address an unlawful arrest.

The panel's resort to *Rajah*—which did concern regulations designed to effectuate the Fourth Amendment—fares no better. The panel claims that the Second Circuit held that "petitioners may be entitled to termination of their removal proceedings without prejudice for egregious regulatory violations." *Sanchez*, 904 F.3d at 953 (citing *Rajah*, 544 F.3d at 446–47). But *Rajah* does not go that far.

---

[6] *See Snajder v. INS*, 29 F.3d 1203, 1206 (7th Cir. 1994) (right to counsel); *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993) (right to counsel); *Montilla v. INS*, 926 F.2d 162, 166 (2d Cir. 1991) (right to counsel); *Calderon-Medina*, 591 F.2d at 530 (right to communicate with consular or diplomatic officers); *Castaneda-Delgado v. INS*, 525 F.2d 1295, 1302 (7th Cir. 1975) (right to counsel).

Although the Second Circuit suggested that in some *other* case a showing of "prejudice," "conscience-shocking conduct," or a "deprivation of fundamental rights" *might* justify termination of proceedings, it did not give any examples of such a circumstance. *Rajah*, 544 F.3d at 447. Moreover, *Rajah* cites to no legal authority for imposing such a remedy when the violated regulation effectuates the Fourth Amendment; instead, like the opinion here, it relies only on inapposite cases involving *procedural* protections. *See id.* (citing *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993); *Montilla v. INS*, 926 F.2d 162, 166 (2d Cir. 1991)). *Rajah* cannot support the panel's innovation.

## IV

Finally, the panel's opinion creates a host of practical problems.

## A

First, the termination-of-proceedings rule creates perverse incentives for aliens and immigration lawyers to inject inefficiency into deportation proceedings. The opinion offers a windfall (termination of proceedings, no less) to those who can show that immigration officials violated their own regulations during the investigation, detention, and removal proceedings—even if such violations had *no effect* on the proceedings that followed. Lingering on such technicalities, however, ignores the Supreme Court's instruction that "[p]ast conduct is relevant *only* insofar as it may shed light on the respondent's right to remain." *Lopez-Mendoza*, 468 U.S. at 1038 (emphasis added).

At the same time, the panel's theory could deter the government from formulating "additional standards to govern prosecutorial and police procedures." *Caceres*,

440 U.S. at 755–56. The conclusion that regulatory violations authorize federal courts to terminate otherwise-meritorious removal proceedings could give the government reason to scrub from the books any regulations that benefit aliens. Perversely, then, the opinion's holding may help Sanchez only to deprive all other aliens of the benefits of the government's "own comprehensive scheme for deterring Fourth Amendment violations by its officers." *Lopez-Mendoza*, 468 U.S. at 1044.

B

The panel's novel termination-of-proceedings remedy also invites a wave of litigation to map its metes and bounds. The initial question, of course, is what exactly "termination without prejudice" means. *Sanchez*, 904 F.3d at 657. The BIA will undoubtedly dismiss proceedings, but DHS could then serve Sanchez with a new Notice to Appear and start all over again. The opinion offers Sanchez nothing more than a meaningless formality before his inevitable removal.

Perhaps, however, the panel has something more drastic in mind. Its reasoning, after all, is that the remedy must put Sanchez into his rightful position as if "no procedural error [had] taken place." *Id.* at 655 (internal quotation marks omitted). Such reasoning sets up a counter-factual in which Sanchez was never detained, never interrogated, and never issued the Notice to Appear. Must the BIA tear up the Form I-213 about Sanchez? Delete all records of him from the government's databases? Order each implicated government official to forget everything he ever knew about Sanchez? Doubtless, enterprising lawyers will seize on the opinion's extravagant reasoning to seek still-more intrusive remedies in civil deportation proceedings. We should not invite their spurious arguments.

## C

I also fear that the decision may not be limited to the immigration context. The opinion introduces a glaring discontinuity between civil removal proceedings on the one hand and other administrative proceedings and criminal prosecutions on the other. The opinion's holding allows aliens who suffer regulatory violations to reap a windfall not present in any analogous area of law.

A criminal defendant convicted on the basis of illegally obtained evidence or a coerced confession has no similar opportunity. He can ask for a new trial with the improperly obtained evidence suppressed, but he cannot demand that the court quash his indictment. Likewise, in administrative contexts, a party can challenge an enforcement action based on procedural failures by the agency. But courts do not enjoin the agency from altogether enforcing the law against the regulated party. I am sure that criminal defendants and civil litigants would much prefer that courts dismissed *their* cases too. When they ask our court to punish regulatory failures the same way in other contexts, how can we deny them the same windfall?

## V

This case should have been simple. The sole question in a deportation proceeding is whether the alien has a "right to remain in this country in the future." *Lopez-Mendoza*, 468 U.S. at 1038. Here, the government can establish Sanchez's unlawful status with admissible evidence, so the BIA correctly affirmed the IJ's removal order.

Instead, the panel's refusal to accept this outcome has produced a decision that (1) defies the Supreme Court's decision in *Lopez-Mendoza*, (2) ignores basic Fourth

Amendment principles by ordering a more-intrusive result than the Amendment authorizes, (3) fashions a remedy to enforce agency regulations without a sound legal basis for such an imposition, (4) shows a profound misunderstanding of the difference between substantive and procedural rights and their appropriate remedies, (5) cites as authority a handful of inapposite out-of-circuit precedents, and (6) imposes serious practical costs on the administration of immigration proceedings.

Worst of all, the opinion's imposition of an extraordinary remedy wastes everyone's time, for it does nothing but delay the petitioner's inevitable removal. The en banc process exists to ensure the sound development of our circuit's case law, and we should have used it here to correct the panel's extravagant and erroneous decision.